IN THE CASE OF


UNITED STATES, Appellee

v.

Edward A. HUMPHERYS, Staff Sergeant
U.S. Army, Appellant

No. 01-0426

Crim. App. No. 9800141

United States Court of Appeals for the Armed Forces

Argued December 11, 2001

Decided July 23, 2002

EFFRON, J., delivered the opinion of the Court, in which
GIERKE and BAKER, JJ., and SULLIVAN, S.J., joined.  CRAWFORD,
C.J., filed an opinion concurring in the result.

<u>Counsel</u>

For Appellant:  Captain Stephanie L. Haines (argued); Colonel Adele H.
    Odegard, Lieutenant Colonel E. Allen Chandler, Jr., Major Imogene M.
    Jamison, and Captain Mary E. Card (on brief); Lieutenant Colonel David A.
    Mayfield, Major Jonathan F. Potter, and Captain Kevin J. Mikolashek.


For Appellee:  Captain William J. Nelson (argued); Colonel Steven T. Salata,
    Lieutenant Colonel Paul H. Turney, and Captain Tami L. Dillahunt (on
    brief); Major Paul T. Cygnarowicz.



Military Judge:  Larry R. Dean



**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

Judge EFFRON delivered the opinion of the Court.

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of three specifications of engaging in nonprofessional social behavior with trainees in violation of a lawful general regulation, making a false official statement, sodomy, and two specifications of adultery, in violation of Articles 92, 107, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 USC §§ 892, 907, 925, and 934. He was sentenced to a bad-conduct discharge. The convening authority approved the sentence as adjudged, and the Court of Criminal Appeals affirmed in an unpublished opinion.

On appellant's petition, we granted review of the following issues:

> I. WHETHER THE ASSISTANT TRIAL COUNSEL
> VIOLATED THE LEGAL NORMS AND STANDARDS OF
> ARMY REGULATION 27-26 AND PROFESSIONAL
> ETHICS BY BREACHING MATERIAL ASPECTS OF HER
> ATTORNEY-CLIENT PRIVILEGE WITH APPELLANT,
> HER FORMER LEGAL ASSISTANCE CLIENT, WHEN SHE
> LATER REPRESENTED THE GOVERNMENT PROSECUTING
> APPELLANT AND USED MATERIALLY ADVERSE
> INFORMATION OBTAINED FROM HER PRIOR
> REPRESENTATION OF APPELLANT TO APPELLANT'S
> PREJUDICE.
>
> II. WHETHER THE EVIDENCE IS LEGALLY
> INSUFFICIENT TO SUPPORT A CONVICTION OF
> SPECIFICATION 1 OF CHARGE I (VIOLATING A
> LAWFUL GENERAL REGULATION) BECAUSE THE
> STATEMENT DOES NOT MEET THE LEGAL DEFINITION

> OF ACTIVITIES PROHIBITED BY THE GENERAL REGULATION.
>
> III.  WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE ALLOWED THE GOVERNMENT TO PRESENT UNCHARGED MISCONDUCT OF THE ACCUSED TO PANEL MEMBERS ON THE MERITS.
>
> IV.  WHETHER THE MILITARY JUDGE ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A NEW TRIAL WHERE TWO MEMBERS FAILED TO DISCLOSE IN <u>VOIR</u> <u>DIRE</u> THAT ONE MEMBER WAS ANOTHER MEMBER'S SENIOR RATER.[1]

For the reasons set forth below, we affirm.

I.  DISQUALIFICATION OF ASSISTANT TRIAL COUNSEL (Issue I)

A.  <u>Factual Background</u>

The charges against appellant, a drill sergeant, were based on allegations that he engaged in sexual misconduct with several female trainees in his platoon.  Two judge advocates were detailed to prosecute the court-martial, Captain (CPT) M as trial counsel, and CPT S as assistant trial counsel.  Prior to trial, defense counsel moved to disqualify CPT S, citing her prior representation of appellant as a legal assistance attorney.  CPT S's prior representation of appellant dealt with child support.  Defense counsel alleged that CPT S subsequently conducted a pretrial interview of appellant's wife in connection with the current case, in which appellant's wife "was asked

---

[1] Our initial grant of review, 56 MJ 143 (2001), included a fifth issue, which subsequently was withdrawn upon appellant's motion.  56 MJ 229 (2001).

questions [of] which she believed CPT S[] had prior knowledge . . . due to her representation of Sergeant Humpherys.  In particular CPT S[] asked . . . [Sergeant Humpherys'] wife about Sergeant Humpherys' children from a prior relationship" and his financial support of the children.

Upon inquiry by the military judge during a pretrial session under Article 39(a), UCMJ, 10 USC § 839(a), CPT S stated that, with respect to the prior representation, she remembered "vaguely something with respect to child support . . . and it was a Soldiers and Sailors Civil Relief Act issue."[2]  She added that she had no recollection of the details, only of the general subject matter.  With respect to the pretrial interview of appellant's wife in the present case, CPT S stated that she asked about the children because the wife was listed as a sentencing witness and during a prior, unrelated court-martial, the panel asked about children and child support.

The Article 39(a) session also established that the legal assistance file generated by CPT S during the prior representation was still maintained in the Staff Judge Advocate's (SJA) office.  Appellant did not ask the military judge to examine that file in camera.  Neither did appellant ask the military judge to take any other steps during the Article

---

[2] See 50 USC app. §§ 501-594.

39(a) session, such as permitting testimony under a protective order, that would have allowed the accused to place into the record the specific details of the prior representation.

The military judge denied the defense's motion to disqualify CPT S on the following grounds: (1) the charges in the present case did not relate to the period of time covered by the prior lawyer-client relationship between appellant and CPT S, nor to any previous marriage; (2) the evidence did not demonstrate that the subject matter of the prior representation had any substantial relationship to any matter in issue in the present case; and (3) the military judge accepted CPT S's assertion that she did not recall the specifics of the prior representation. The military judge added, however, that he would reconsider the motion if it became apparent during subsequent proceedings that there was a connection between the prior representation and the instant case.

When appellant's wife was called as a defense witness, CPT S conducted the cross-examination. During that examination, appellant's wife testified that it was "unthinkable" that her husband would commit adultery because they attended church together, their religious beliefs were deeply held, and he loved her. In response, CPT S questioned appellant's wife "about adultery, children out of wedlock, and religious and moral views held by her and appellant." Final Brief at 12. Appellant

contends that this was a violation of an ethical duty because "[t]he obvious implication is that CPT S[] obtained the information from appellant in her capacity as his lawyer."  Id.

### B.  Legal Background

Prior representation may lead to disqualification on either of two independent grounds.  First, an attorney may be disqualified if the current representation is adverse to a former client, and the prior representation of that client involved the same or a substantially related matter.  See, e.g., United States v. Green, 5 USCMA 610, 18 CMR 234 (1955).  Second, an attorney may be disqualified if there is a reasonable probability that specific confidences from the prior representation may be used to the disadvantage of the former client.  Islander East Rental Program v. Ferguson, 917 F.Supp. 504, 509 (S.D. Tex. 1996).

The substantial relationship test and the confidential information test both appear in the ABA's Model Rules of Professional Conduct, Rule 1.9(a) and (c), respectively.  In general, the federal civilian courts have adopted Rule 1.9 as the national standard governing attorneys and their disqualification.  See, e.g., Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1383-84 (10th Cir. 1994); In re American Airlines, Inc., 972 F.2d 605 (5th Cir. 1992); Havens v. Indiana, 793 F.2d

6

143, 145 (7th Cir. 1986); <u>In re Corn Derivatives Antitrust Litigation</u>, 748 F.2d 157, 161-62 (3rd Cir. 1984).

The Army has adopted a modified version of Rule 1.9 to govern the conduct of its attorneys, as have the other services.[3] The Army's rule prohibits an attorney who has formerly represented a client in a matter from representing "another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the client unless the former client consents after consultation[.]"  Dep't of the Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Appendix B, Rule 1.9(a)(1) (May 1, 1992).  Rule 1.9(a)(2) prohibits an attorney from using "information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."  <u>Id</u>.

Our Court has employed a three-pronged analysis to determine when former counsel is disqualified from prosecuting a subsequent case under the substantial relationship test.  The accused carries the burden of demonstrating "(1) the former representation; (2) a substantial relation between the subject matter of the former representation and the issues in the later

---

[3] <u>See</u> Dep't of the Navy, JAG Instruction 5803.1B, Enclosure 1, Rule 1.9 (11 Feb. 2000); TJAG Policy Number 26, Air Force Rules of Professional Conduct, Attachment 1, Rule 1.9 (Feb. 4, 1998).

action; and (3) the later adverse employment." United States v. Rushatz, 31 MJ 450, 454 (CMA 1990)(citing United States v. Stubbs, 23 MJ 188, 193-94 (CMA), cert. denied, 484 U.S. 846 (1987)); see, e.g., United States v. McCluskey, 6 USCMA 545, 20 CMR 261 (1955)(legal assistance attorney who acquires adverse information against accused prohibited from serving as prosecutor in charges arising out of same matter).  The accused must delineate "with specificity the subject matters, issues and causes of action" which the prior representation and the instant case have in common.  In re American Airlines, Inc., supra at 614.

The substantial relationship test does not require demonstration of specific confidences that might be used against the former client.  Rushatz, 31 MJ at 454 ("a lawyer cannot prosecute his former client in the same or a related matter, even though while acting for that former client he gained no knowledge which could be used to adversely affect the former client in a subsequent proceeding").  The test reflects the importance of preventing not only the impropriety of a dishonest practitioner, but also the appearance of impropriety when an honest practitioner places himself or herself in a position of choosing between conflicting interests.  McCluskey, supra at 550, 20 CMR at 266.

The confidential information test does not require proof of a substantial relationship.  "If, in fact, a client establishes that confidential information told to a lawyer during a former representation might be used against the client in the case at hand, the substantial-relationship test need not be considered and disqualification will result."  ABA Annotated Model Rules of Professional Conduct, at 146 (4th ed. 1999) (citing Islander East Rental Program, 917 F.Supp. at 504); see also ABA Model Rules of Professional Conduct, Rule 1.9(c).  Under the confidential information test, the accused must demonstrate the specific confidences related during the prior representation and how they could be used to the disadvantage of the accused in the subsequent representation.  Evans v. Artek Systems Corp., 715 F.2d 788, 794 (2nd Cir. 1983)("moving defendants bear the heavy burden of proving facts required for disqualification").  This level of proof is designed to avoid speculation about what communications may have occurred during the existence of the prior relationship and how such communications might be used in the instant case.

Military judges possess ample authority to protect the attorney-client relationship during consideration of disqualification motions.  Their authority includes the power to

examine evidence in camera, seal records of any Article 39(a) sessions, exclude unnecessary persons from hearings, and issue protective orders.

## C.  Discussion

"A motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." Musicus v. Westinghouse Electric Corp., 621 F.2d 742, 744 (5th Cir. 1980).[4]  We review a military judge's denial of a motion to disqualify trial counsel for an abuse of discretion.  United States v. Hamilton, 41 MJ 22, 23 (CMA 1994).

Appellant contends that CPT S violated the Army's ethical rules by prosecuting the court-martial case against her former legal-assistance client.  The critical question before us is whether appellant has demonstrated that the subject of the prior representation was substantially related to the case at bar, or that specific confidential information gained by CPT S during the prior representation might have been used to the disadvantage of appellant in the present case.

---

[4] An attorney has an ethical duty to identify conflicts of interest concerning the attorney's representation of a client and to take appropriate steps to decline or terminate representation when required by applicable rules, regardless of whether a party-litigant has filed a motion to disqualify the attorney.  ABA Model Rule of Professional Conduct 1.16; see also Dep't of the Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Appendix B, Rule 1.16 (May 1, 1992); Navy JAG Instruction 5803.1B, supra at Rule 1.16; Air Force Rules of Professional Conduct, supra at Rule 1.16.

Appellant's vague assertions during the pretrial hearing -- that the prior case on child custody was substantially related to the pending court-martial charges of adultery, sodomy, violation of a lawful general regulation, and making a false official statement -- failed to provide the necessary specificity to determine the commonality between the subject matter, causes of action, or issues in the two cases. Under these circumstances, the military judge did not abuse his discretion in ruling that appellant failed to demonstrate a substantial relationship between the earlier representation and the present case.

Appellant also has failed to carry the burden of establishing that the cross-examination of his wife by CPT S was based upon specific confidential communications between himself and CPT S during the prior representation. During argument on the motion to disqualify CPT S, defense counsel made a perfunctory assertion that CPT S gained information from the prior representation that could be used against appellant during this court-martial. CPT S responded by telling the military judge that she did not remember the specifics of the representation and that her pretrial questioning of appellant's wife concerning the children was based on experience with a past court-martial panel's interest in financial responsibilities for dependents. At that point, the military judge offered the

defense an opportunity to present further evidence on the issue, but the defense declined the opportunity to rebut CPT S's explanation.

Appellant had a number of other opportunities to introduce evidence showing that the harmful information used during the cross-examination of appellant's wife was gained through the prior representation. During argument on the motion, it was established that the file generated by CPT S during the prior representation was still in the SJA's office. Appellant could have asked the military judge to examine this file in camera. Appellant also could have requested that he be allowed to testify in a closed hearing with a sealed record. Instead, appellant merely made the conclusory assertion that this was the "same type of information appellant disclosed to CPT S[] in her previous capacity as appellant's legal assistance attorney." There may be cases where it is apparent from the record that the information could not have been gained except through prior representation, but this is not such a case. To date, appellant has taken no action to establish that CPT S's knowledge was derived from the earlier representation.

Under these circumstances, the military judge did not abuse

his discretion in denying the disqualification motion.[5] We also note that during the cross-examination of appellant's wife, defense counsel did not object or request that the military judge reconsider his earlier ruling, even though the military judge had specifically stated he was willing to do so if circumstances changed.

## II.  THE UNCHARGED MISCONDUCT (Issue III)

### A.  The Testimony of Private CA and Private F

#### 1.  Background

At a pretrial session under Article 39(a), supra, defense counsel moved in limine to exclude portions of the anticipated testimony of Private (PVT) CA and PVT F on the ground that it contained inadmissible evidence of uncharged misconduct.  The defense objected to PVT CA's anticipated testimony that, after appellant observed her dancing erotically, he later asked her, in his office and in the presence of PVT R, if she would dance for him in that manner.[6]  The defense also objected to PVT CA's anticipated testimony that, on a separate occasion, appellant

---

[5] Although we conclude that the military judge did not abuse his discretion under the particular circumstances of the present case, we note that the practice of detailing former legal-assistance attorneys to prosecute their former clients is fraught with difficulties and may lead to litigation that does not reflect well on the military justice system.  This practice should not be encouraged.

[6] PVT R was a trainee in appellant's platoon.  The charges against appellant included engaging in adultery and an unlawful nonprofessional relationship with PVT R.

13

asked her if she would have "gotten with him" if he were younger.  The defense objected to PVT F's anticipated testimony that appellant told her, "You're pretty," and made other comments similar to his remarks to PVT CA.  The defense argued that the testimony at issue did not "meet the requirements under Rule 404(b) and that the only use of this testimony would be for the prejudice of Sergeant Humpherys and to [incite] the panel."

The prosecution offered two theories in support of the admission of PVT CA's and PVT F's testimony.  First, that the testimony showed "a course of conduct by the accused of making . . . flirtatious and complimentary comments to trainees."  Second, that it demonstrated a remark appellant allegedly made to PVT P -- that he heard she had "jungle fever" -- "was made with a non-innocent intent."  See Part III, infra.

The military judge conducted a detailed inquiry into the purpose of this testimonial evidence.  During that inquiry, defense counsel acknowledged that a probable defense would be that appellant had an official purpose for making the "jungle fever" statement to PVT P in connection with an investigation conducted by several of the drill sergeants concerning letters written by female trainees to male trainees in a different platoon.

Based on the understanding of both trial counsel and defense counsel, that appellant's intent in making the remark to

14

PVT P would be a critical fact in dispute, the military judge ruled that the testimony of both PVT CA and PVT F provided relevant circumstantial evidence of a non-innocent intent. The military judge also ruled that the prejudicial effect of the evidence was substantially outweighed by its probative value, and that any prejudicial effect could be ameliorated through a limiting instruction. The military judge did not articulate the basis for his ruling. Based on these rulings, he conditionally admitted the evidence, subject to change if the evidence did not emerge as anticipated.

In her later testimony, PVT CA testified generally as anticipated. She testified that appellant had complimented her and told both her and PVT AA "that we were very pretty."[7] She also related an incident in which, without knowing that appellant was observing, she had been dancing erotically in the bay while "fooling around with a bunch of girlfriends." Later, appellant asked her if she would dance privately for him. Additionally, she testified that, while talking with appellant about her physical training test, appellant told her she "would pass it and not to be stressed out over it." He then "rubbed his finger under [her] chin and told

---

[7] PVT AA also was a trainee in appellant's platoon. The charges against appellant included engaging in adultery and an unlawful nonprofessional relationship with PVT AA.

15

[her] to smile.  And he had also said if he was younger would [she] get with him. . . ."

PVT F testified about an incident in which appellant had counseled her "that the way [she] walked was inappropriate for the environment that [she] was in."  Appellant followed up that comment by asking PVT F whether she "had ever been told that [she] was attractive."

The military judge gave a limiting instruction to the members as to the permissible use of the testimony by PVT CA and PVT F.  He advised the members that the evidence "may be considered by you for the limited purpose of its tendency if any to prove a plan, design or intent on behalf of the accused to engage in a nonprofessional social relationship and also to prove that the accused did not have either an official purpose or innocent intent regarding his questioning of Private P[]."  Neither counsel objected to this instruction.

## 2.  Discussion

We review a military judge's decision to admit evidence for an abuse of discretion.  United States v. Ayala, 43 MJ 296, 298 (1995).  The "judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."  Id.

"[E]vidence which is offered simply to prove that an accused is a bad person is not admissible" under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States (2000 ed.).[8] United States v. Reynolds, 29 MJ 105, 109 (CMA 1989). Mil.R.Evid. 404(b), however, is a rule of inclusion, not exclusion. "[T]he sole test under Mil.R.Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime ...." United States v. Tanksley, 54 MJ 169, 175 (2000)(quoting United States v. Castillo, 29 MJ 145, 150 (CMA 1989)). As the Supreme Court stated when speaking of Mil.R.Evid. 404(b)'s counterpart, Fed.R.Evid. 404(b): "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). In addition to having a proper purpose, the proffered evidence must meet the standards of Mil.R.Evid. 104(b), 402, and 403. See Reynolds, 29 MJ at 109.

Reflecting the combined requirements of these rules, our Court applies a three-pronged test for determining admissibility of other-acts evidence under Mil.R.Evid. 404(b). See id. We evaluate: (1) whether "the evidence reasonably supports a

---

[8] All Manual provisions cited are identical to the ones in effect at the time of appellant's court-martial.

finding by the court members that appellant committed prior crimes, wrongs or acts"; (2) "[w]hat fact of consequence is made more or less probable by the existence of this evidence"; and (3) whether "the probative value [is] substantially outweighed by the danger of unfair prejudice[.]" Id. (internal quotations, ellipses, and citations omitted); see also Tanksley, 54 MJ at 176-77. "If the evidence fails any of the three tests, it is inadmissible." United States v. Cousins, 35 MJ 70, 74 (CMA 1992); accord Reynolds, 29 MJ at 109.

Under the Reynolds analysis, the military judge did not abuse his discretion by admitting the testimony of PVTs CA and F. First, there was more than sufficient evidence for the members to conclude that appellant made the statements to PVT CA. In addition to her testimony, the incidents were confirmed by PVT AA and PVT R during their testimony regarding appellant's initiation of sexual activity with them. PVT F's testimony in this regard was brief but straightforward and would reasonably support a finding by the members that appellant made the statement in question.

Second, the evidence was relevant to a fact in issue. See Mil.R.Evid. 401. After a detailed inquiry into the matter, the military judge established through defense counsel that a probable defense to the charge involving PVT P was that the statement to PVT P was made for an official purpose. The

18

military judge admitted the testimony of PVTs CA and F as evidence of appellant's intent in making the "jungle fever" remark to PVT P, and he stated that his pretrial ruling was subject to change if the development of the case demonstrated that intent was not in issue.

Proving intent is a proper purpose for admitting extrinsic-acts evidence. Mil.R.Evid. 404(b). Appellant's intent in making the jungle fever remark to PVT P clearly was in issue and was a fact of consequence. His inappropriate comments to other trainees, in an effort to initiate unlawful sexual activity, made it more probable that his comment to PVT P was not made with innocent intent. "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Tanksley, 54 MJ at 176 (quoting Huddleston, 485 U.S. at 685).

Finally, with respect to danger of unfair prejudice under Mil.R.Evid. 403, we note that the military judge has "wide discretion" in applying the rule, and this Court exercises "great restraint" in reviewing a military judge's 403 ruling if his reasoning is articulated on the record. United States v. Harris, 46 MJ 221, 225 (1997)(citing Government of the Virgin Islands v. Archibald, 987 F.2d 180, 186 (3rd Cir. 1993)). When

19

the military judge fails "'to explain the grounds for denying a Rule 403 objection,' his ruling is not entitled to such deference." Id. (quoting Archibald, supra).  Although the military judge in the present case did not articulate his reasons for concluding that any prejudicial effect of the testimony did not substantially outweigh its probative value, we may determine that the record permits us to conduct the required balancing during appellate review.  Based on the record in the present case, we conclude that the danger of unfair prejudice to appellant's interests did not substantially outweigh the probative value of the extrinsic-acts evidence in proving intent, particularly in light of the degree to which the record otherwise corroborated the testimony of PVT CA and PVT F.  We note that during the prosecution's closing argument on the merits, which covers 22 pages in the record of trial, the assistant trial counsel never mentioned the testimony from PVT CA or PVT F.  In light of the military judge's "clear, cogent, correct, and complete instructions to the court members regarding the use of [both witnesses'] testimony," appellant has not demonstrated unfair prejudice.  Tanksley, 54 MJ at 177.

B.  The Testimony of Private Q and Private F and Appellant's
Sworn Statement

1. Background

Appellant, in his brief before our Court, obliquely
challenges admission of his sworn statement to investigators and
the testimony of PVTs Q and F during the Government's case in
rebuttal.  At trial, when the prosecution offered appellant's
statement into evidence at the close of its case-in-chief,
defense counsel objected to the first page of the document.  On
that page, appellant answered questions about why he took four
female trainees, including PVTs Q and F, with him in a van at
12:10 a.m. to go to the hospital to pick up two other soldiers,
in violation of local installation regulations.  The defense
argued that this evidence of misconduct was not relevant to any
of the charges or, alternatively, that the danger of unfair
prejudice substantially outweighed its probative value.  See
Mil.R.Evid. 402 and 403.

The prosecution argued that the sworn statement was
admissible evidence of appellant's course of conduct in
"soliciting and engaging in improper behavior with trainees," in
violation of local regulations, and that it rebutted the
testimony of Sergeant First Class (SFC) Jones.  SFC Jones, an
earlier prosecution witness, had been adopted as a defense
witness during cross-examination.  During that cross-

21

examination, SFC Jones testified that he had a high opinion of appellant as a drill sergeant and non-commissioned officer and that appellant followed regulations in his training methods. The military judge admitted the sworn statement as "fair rebuttal testimony of whether the accused complies with Fort McClellan regulation ...."[9]

Subsequently, during the prosecution's case in rebuttal, trial counsel offered the testimony of PVTs Q and F to relate the circumstances leading up to and during this trip in the van. When PVT Q began to describe the details of the trip, defense counsel objected on grounds of relevance. Trial counsel responded that it was offered "[t]o rebut the assertion by the defense that he does not treat females differently from males." After the military judge indicated that he was "going to allow some leeway on the questions if [trial counsel got] directly to

---

[9] The separate opinion suggests that appellant "opened the door" for admission of this evidence. There is a split in authority as to whether an improper use of extrinsic acts by the defense in such circumstances opens the door to rebuttal by the prosecution. Compare United States v. Benedetto, 571 F.2d 1246, 1250 (2nd Cir. 1977) (rebuttal not permitted), with Ryan v. Board of Police Commissioners, 96 F.3d 1076, 1082 n.1 (8th Cir. 1996) (permitting rebuttal); see also United States v. Reed, 44 MJ 825, 826 (A.F.Ct.Crim.App. 1996). Resolution of this matter is not necessary in the present case. The testimony of SFC Jones concerning appellant's characteristics as a non-commissioned officer was offered as opinion testimony, not as a specific instance of conduct. Moreover, the testimony did not state that appellant complied with all standards of conduct. The testimony was focused specifically on his reputation as a drill sergeant, noting that he used a training method specified in a training regulation. Therefore, even if the defense testimony were treated as specific acts evidence showing that appellant used a prescribed training technique, it would not have opened the door for evidence showing that appellant engaged in misconduct in violation of a different regulation. See United States v. Martinez, 988 F.2d 685, 702 (7th Cir. 1993) (evidence must directly contradict evidence previously received).

the point," PVT Q proceeded briefly to relate that appellant had invited the four trainees to accompany him to the hospital in the van and the nature of the "very relaxed" atmosphere during the trip.  She also testified that appellant had told them "not to tell anybody" about the trip.  Trial defense counsel objected to the testimony of PVT F on this subject on the ground that it was "cumulative at best."

## 2.  Discussion

Appellant contends that his sworn statement and the testimony of PVTs Q and F were improperly admitted under Mil.R.Evid. 404(b).  The military judge did not rely on Rule 404(b) but, instead, admitted both the sworn statement and the testimony as rebuttal evidence in response to appellant's "good soldier" defense.  Mil.R.Evid. 404(a)(1) allows the accused to present evidence of his good military character if that trait is pertinent to the charged offense.  The rule also allows the Government to present character evidence in rebuttal of the good-military-character evidence presented by the defense.

To the extent that there was an error, it occurred as a result of the Government's method of rebutting appellant's good-soldier defense.  Extrinsic evidence of prior acts of misconduct is not admissible to rebut opinion evidence of good military character.  See United States v. Pruitt, 46 MJ 148, 151 (1997);

United States v. Reed, 44 MJ 825, 826 (A.F.Ct.Crim.App. 1996).

Normally, the prosecution tests such opinion evidence through

cross-examination "into relevant specific instances of conduct."

Mil.R.Evid. 405(a).  That procedure was not followed in the

present case.

In assessing whether the error materially prejudiced a

substantial right of appellant, see Art. 59(a), UCMJ, 10 USC

§ 859(a), we note that the error here was in the method used to

present rebuttal evidence concerning his claimed good military

character, not in the nature of the evidence itself.  The

prosecutor would have been permitted to cross-examine

appellant's character witnesses concerning this incident under

Mil.R.Evid. 405.

We also note that the military judge properly instructed

the members on the limited use of this evidence.  He emphasized

that the members could consider the evidence of the hospital

trip "for the limited purpose if any that it had to refute the

defense[] that w[as] raised by the accused that . . . the

accused is a good soldier."  The limiting instruction properly

guarded against misuse by the members of the evidence of

specific acts.  United States v. Tyndale, 56 MJ 209, 216

(2001)(citing United States v. Holt, 33 MJ 400, 408 (CMA 1991)).

In short, the question before us is whether appellant was

prejudiced from admission of certain evidence, when the nature

of that evidence would have been admissible through a different vehicle and when the military judge properly limited the use to which the members could put it. "An evidentiary error may be harmless when evidence of the guilt of the accused is overwhelming." Pruitt, 46 MJ at 151. We find that the evidence in this case overwhelmingly supports the charges.

Appellant was convicted of two specifications of adultery, one specification of sodomy, three specifications of violating a lawful general regulation, and one specification of making a false official statement. All of these charges, except specification 1 of Charge 1 (violation of a lawful general regulation by making the jungle fever remark to PVT P) arose from appellant's misconduct with PVTs AA and R and were addressed in his statement given to investigators. Both of these privates testified at trial and confirmed that they had sexual relations with appellant. Further, both confirmed that on several occasions, they had sexual relations with him simultaneously. Finally, several soldiers testified that PVTs AA and R had discussed appellant's sexual contact with them during the training cycle. We reach a similar conclusion with respect to specification 1 of Charge I -- the sufficiency of the evidence to support appellant's conviction for violating a regulation by making the "jungle fever" remark to PVT P. See Part III, infra.

III.  LEGAL SUFFICIENCY OF THE EVIDENCE  (Issue II)

A.  Background

Appellant challenges the legal sufficiency of the evidence supporting his conviction of violating a lawful general regulation by saying to PVT P that he heard she had "jungle fever."  The Government charged appellant with violating Fort McClellan Regulation 632-1, Section III, paragraph 8(e)(9), which prohibits attempting to or soliciting a trainee to engage in nonprofessional behavior.[10]  The Government's theory at trial was that appellant's "jungle fever" remark was intended to test PVT P's reaction and determine if she was amenable to having inappropriate sexual relations with him.  The nature of the "jungle fever" remark and appellant's intent in making it are at the heart of this charge.

---

[10] Fort McClellan Regulation 632-1, Section III, paragraph 8(e), states:

> [n]onprofessional social behavior includes, but is not limited to--
>
> (1) Dating.
> (2) Any type of sexual activity.
> (3) Any touching of a sexual nature.
> (4) Hugging.
> (5) Kissing.
> (6) Handholding or physical caressing.
> (7) Drinking of alcoholic beverages with trainees or receptees.
> (8) Meeting privately with trainees or receptees for any purpose of entertainment, dining, recreation, sport, or intimacy.
> (9) Attempting or soliciting to do (1) through (8) above.

PVT P described the circumstances under which appellant made the remark.  She testified that appellant told her that the other trainees were talking about her and asked her if she wanted to know what they were saying.  PVT P said she did not, and she left.  Shortly thereafter, appellant approached her again, with PVT Q at her side, and told her that the trainees were saying that she "had Jungle Fever."  When appellant asked her if she knew what that meant, she said she did not.  Later, she learned from other trainees that it was a slang reference to interracial sexual relations.

According to PVT P, appellant subsequently approached and asked her if she "figured out what it had meant."  When she told him that she had, he asked if it offended her.  Trial counsel asked, "And when he asked if that offended you, what did you take that to mean?"  PVT P responded:  "Meaning if I was attracted to or if I liked black men."

PVT Q corroborated PVT P's testimony.  She stated that, when appellant made the "jungle fever" remark to PVT P, he turned to PVT Q and asked her if she knew what it meant.  When PVT Q said she did not, appellant "just like smiled like oh, they don't know what that means, and then he just said carry on."

Other witnesses testified as to the inappropriateness of a drill sergeant using the term "jungle fever" to a trainee.

Staff Sergeant (SSG) Alston said that such a remark was "not professional" and that "[y]ou don't talk to trainees that way." He opined that "a good NCO or drill sergeant [would not] ask a trainee about their [sic] romantic or sexual interests" and would not "ask them what race they would prefer to have a romantic relationship with." SFC Mundy agreed that he would never ask a trainee about her sexual preference or get involved in a conversation with a trainee about her romantic interests.

## B. Discussion

Appellant does not dispute that the term "jungle fever" was used to describe sexual preferences of trainees. He contends, however, that under the specific prohibitions of the regulation in issue, there was no offense. He states: "Assuming that [he] said to PVT P[] that 'he heard she had jungle fever,' such a statement cannot reasonably be construed as an attempt or solicitation to date, engage in any type of sexual activity, touch her in a sexual nature, hug, kiss, hold her hand, drink alcohol, or meet privately with her for purposes of entertainment, dining, recreation, sport, or intimacy." Final Brief at 14. He contends: "Private P[] in fact indicated that she did not even know what the term 'jungle fever' meant when first asked. . . . [He] simply told PVT P[] what other privates had been saying about her, i.e., that she had 'jungle fever.'

28

[He] therefore cannot be guilty of a violation of this regulation when he did not attempt or solicit PVT P[] in any manner." Id. at 14-15.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." United States v. Turner, 25 MJ 324 (CMA 1987)(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The Government contended at trial that appellant made the remark to solicit a non-professional relationship with PVT P. The Government argued that appellant's inappropriate comments to other trainees, which preceded a number of adulterous relationships, underscored this intent. The Government's theory was that he made inappropriate comments as a way of testing the reactions of the trainees to determine if he could pursue a relationship with a particular trainee. The ultimate question is whether, in view of all the circumstances, a rational finder of fact could have agreed with this theory and could have found all the elements of the offense. See United States v. Brown, 55 MJ 375, 385 (2001).

While appellant equivocates in his brief as to whether he made the remark, the testimony of PVT P, corroborated by PVT Q, provides legally sufficient evidence to support the finding that

he did so. See Jackson, supra. As to his intent in making the remark, the Government presented the testimony of PVTs CA, AA, and R as evidence that the remark to PVT P was made with a non-innocent intent. They all testified that appellant made inappropriate sexual remarks to them as a predicate to initiating a prohibited relationship. In addition, the prosecution presented the testimony of PVTs AA and R that appellant made inappropriate comments to them prior to starting the adulterous affairs. Finally, PVT P also testified that on another occasion, appellant "caressed" her head under the guise of checking for a fever -- that he touched her with "a caressing motion," which was not proper procedure. Viewing this evidence in the light most favorable to the prosecution, a rational finder of fact, considering all the circumstances of this case, could conclude beyond a reasonable doubt that appellant was probing the possibility of a prohibited relationship with PVT P and that he made this remark as a means of doing so, in violation of the regulation. See id.

## IV. PETITION FOR A NEW TRIAL (Issue IV)

### A. Background

During voir dire, the military judge asked whether any member was in the rating or supervisory chain of any other member, and all members responded negatively. After appellant's

wife testified on sentencing, she remained in the courtroom to observe during closing arguments.  She noticed two of the panel members and realized that they were in the same rating chain.  After sentencing, appellant's wife had an opportunity to talk to defense counsel, and she told him that two of the members were in the same rating chain.  Defense counsel investigated and discovered that Lieutenant Colonel (LTC) S, who was the president of the panel, was the senior rater for First Sergeant (1SG) M, another member.

The defense submitted a post-trial motion for a new trial on the basis that these two panel members had failed to disclose their rating chain relationship during voir dire.  See RCM 1102(b)(2) and 1210(f), Manual, supra.  After the Government filed its response addressing the relationship and its impact on the trial, the defense filed a "renewed motion for a new trial." In that motion, defense counsel argued:  "The question that is under scrutiny here is not whether any member [sic] worked together in the past, but rather why LTC S[] and 1SG M[] chose to conceal the fact that there was an existing rater-rated relationship."

The military judge held a post-trial session under Article 39(a), supra, to question the two members, during which both of them acknowledged the relationship but indicated that they did not remember being asked about it during voir dire.  Both

testified that their answers were not efforts to conceal their rating chain relationship.

At the conclusion of the hearing, the military judge made extensive findings of fact and conclusions of law. The military judge found that "1SG M[] feels comfortable disagreeing with LTC S[] and feels she is a very approachable commander." He also found that "[b]oth deny any impact of their relationship on the deliberations. LTC S[] noted that, in the deliberations, there was no effort by her to influence any member and that each person was allowed their [sic] own opinion. 1SG M[] also noted that he felt no threat or influence on him and that his vote was his own and was freely allowed. The court finds these statements to be truthful."

The judge concluded that LTC S and 1SG M had given a "technically . . . incomplete response" but that "the parties were clearly on notice, well prior to trial" of the duty and unit assignment of each member. He also concluded that LTC S allowed the members to vote their own conscience and that the members felt the vote was their own. Finally, he concluded that he would not have granted a challenge for cause at trial had LTC S and 1SG M been challenged on the basis of this relationship.

B.  Post-Trial Review of a Panel Member's Responses During Voir Dire

"Impartial court-members are a sine qua non for a fair court-martial."  United States v. Modesto, 43 MJ 315, 318 (1995); see RCM 912(f)(1)(N), Manual, supra.  Voir dire is an important method for identifying a member whose impartiality might be questioned.  United States v. Wiesen, 56 MJ 172, 174 (2001), pet. for recon. denied, __ MJ __ (2002).  When a panel member fails to disclose information during voir dire, the defendant must make two showings in order to receive a new trial.  "'[A] party must first demonstrate that a [panel member] failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.'  McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. [548,] 556 [(1984)]."  United States v. Mack, 41 MJ 51, 55 (CMA 1994).  We have noted that an evidentiary hearing is the appropriate forum in which to develop the full circumstances surrounding each of these inquiries.  Id. at 55-56.

One basis upon which a court member may be challenged is the member's actual or implied bias.  See Wiesen, 56 MJ at 172; RCM 912(f)(1)(N), supra.  "The test for actual bias is whether any bias is such that it will not yield to the evidence presented and the judge's instructions."  Id. at 174 (internal quotations

33

and citations omitted).  In contrast to the subjective standard of actual bias, the core of implied bias is "a concern with public perception and the appearance of fairness in the military justice system." Id.  "[T]here is implied bias when 'most people in the same position would be prejudiced.'"  Id. at 174 (citations omitted).  "[T]he military judge is given great deference when deciding whether actual bias exists because it is a question of fact, and the judge has observed the demeanor of the challenged member."  United States v. Napolitano, 53 MJ 162, 166 (2000)(citing United States v. Warden, 51 MJ 78, 81 (1999)).  On a question of actual bias, we review the judge's findings on actual bias for an abuse of discretion.  Wiesen, 56 MJ at 175.  "On the other hand, issues of implied bias, which entail both factual inquiry and objective application of legal principle, are reviewed under a less deferential standard."  Id.


## C.  Discussion

Petitions for a new trial "are generally disfavored."  United States v. Williams, 37 MJ 352, 356 (CMA 1993).  Granting a petition for a new trial rests "within the sound discretion of the authority considering . . . [that] petition."  United States v. Bacon, 12 MJ 489, 492 (CMA 1982)(quoting United States v. Lebron, 46 CMR 1062, 1066 (AFCMR 1973)).  We review a military

34

judge's ruling on a petition for a new trial for abuse of that discretion. United States v. Rios, 48 MJ 261, 268 (1998).

The post-trial process empowers the military judge to investigate and resolve allegations, such as those in this case, by interviewing the challenged panel members. It allows the judge to accomplish this task while the details of trial are still fresh in the minds of all participants. The judge is able to assess first-hand the demeanor of the panel members as they respond to questioning from the bench and counsel. Our role in the process is to review the results and ensure the military judge has not abused his or her discretion in reaching the findings and conclusions.

The military judge found that LTC S and 1SG M did not give a correct response when asked whether any member was in a rating chain with any other member. The military judge expressly concluded that the omission was "technical," and he implicitly found that it was inadvertent and without any intent to conceal or deceive. In light of our determination as to whether a full and correct response would have provided a valid basis for a challenge for cause, we need not decide here whether the answers under these circumstances satisfy appellant's initial burden to "demonstrate that [the members] failed to answer honestly a material question on voir dire. . . ." Mack, 41 MJ at 55.

"It is well settled that a senior-subordinate/rating relationship does not per se require disqualification of a panel member." Wiesen, 56 MJ at 175. In this case, the military judge conducted a full evidentiary hearing on the record. That inquiry made clear that the relationship between LTC S and 1SG M was entirely professional, did not involve any negative aspects between them, and would not hamper 1SG M's independent thinking and fulfillment of his responsibility as a panel member. No member of the public would reasonably suspect the fairness of this trial based on this relationship. Similarly, as to actual bias, the hearing made equally clear that LTC S did not improperly influence 1SG M during deliberations and that 1SG M felt no threat or influence on him and his vote was his own. The military judge concluded that there was no bias in the deliberations.

Based upon these proceedings, the military judge concluded that he would not have granted a challenge for cause had it been made at trial. We agree that full and accurate responses by these members would not have provided a valid basis for a challenge for cause against either or both. Accordingly, the military judge did not abuse his discretion in ruling that appellant was not entitled to a new trial.

V.   CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Humpherys, No. 01-0426/AR

CRAWFORD, Chief Judge (concurring in the result):

I agree with the result reached in this case but would take a different approach than the majority regarding character evidence. Sergeant First Class Jones opined that appellant was "a competent, professional drill sergeant, noncommissioned officer. He thinks about the welfare of the soldier. He trains them. He applies the insist and assistment method in accordance with TRADOC regulation 350-6 [sic]." Accordingly, part of the good character evidence presented by the defense was that appellant was complying with the regulations. Thus, it was permissible for the Government to introduce the first page of appellant's own statement to contradict the evidence that appellant complied with trainee regulations. See, e.g., Ryan v. Board of Police Commissioners, 96 F.3d 1076, 1082 n.1 (8th Cir. 1996)("a court may permit the opponent to introduce similarly inadmissible evidence in rebuttal"); United States v. Brewer, 43 MJ 43, 50 (1995)(defense responsible for reasonable inferences from answer)(Crawford, J., concurring in the result). Once the defense opened the door by presenting evidence that appellant complied with the regulations pertaining to trainees, the Government was permitted to rebut that evidence. Id. Once the accused introduces evidence of pertinent traits of good character, he has opened the door for rebuttal of those traits.

United States v. Humpherys, No. 01-0426/AR

See generally United States v. Hewitt, 634 F.2d 277 (5th Cir. 1981).

   With regard to Issue IV, I agree that the military judge did not abuse his discretion in denying appellant's petition for a new trial.  Appellant has demonstrated no valid basis to sustain a causal challenge.  See McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984); United States v. Wiesen, 56 MJ 172, 177 (2001)(Crawford, C.J., dissenting).