CRAWFORD, Judge
(dissenting):
As I am unwilling to abandon precedent and arbitrarily reassign appellate burdens, I cannot join the majority in rewarding Appel *5 lant for what I view as the certainly questionable — and potentially “sharp” — practice of defense counsel in both the timing and substance of this issue. Viewed from any angle, Appellant has failed to meet his burden in two regards: he has not acted in a timely manner, and he has not “demonstrate[d] that a [panel member] failed to answer honestly a material question on voir dire.” McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Because we necessarily encourage repetition of those practices we reward, I must respectfully dissent from the majority’s remand for a proceeding under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). Not only is this remand based entirely on one counsel’s belated, conclusory recollection of an opinion voiced in an unrecorded proceeding, but that same counsel’s unexplained delay in raising the issue has effectively denied any opportunity for the Government to preserve evidence of the “facts” on which Appellant now relies.
In United States v. Humpherys, 57 M.J. 83, 96 (C.A.A.F.2002), this Court examined, for abuse of discretion, a military judge’s denial of a motion for new trial based on a material misstatement by a court member during voir dire involving the denial of a rating-chain relationship. Applying the test prescribed by the United States Supreme Court, we held in Humpherys that:
[w]hen a panel member fads to disclose information during voir dire, the defendant must make two showings in order to receive a new trial. “ ‘[A] party must first demonstrate that a [panel member] failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.’ McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. [548,] 556, 104 S.Ct. 845, 78 L.Ed.2d 663 [(1984)].” United States v. Mack, 41 M.J. 51, 55 (C.M.A.1994). We have noted that an evidentiary hearing is the appropriate forum in which to develop the full circumstances surrounding each of these inquiries. Id. at 55-56.
57 M.J. at 96 (citation omitted).
Unlike Appellant’s case, in Humpherys the material misstatement was one of fact, as opposed to opinion, and was brought to the military judge’s attention soon after its discovery. Emphasizing the importance of timely action by counsel, this Court explained the benefits that timeliness offers the truth-finding process:
The post-trial process empowers the military judge to investigate and resolve allegations, such as those in this case, by interviewing the challenged panel members. It allows the judge to accomplish this task while the details of trial are still fresh in the minds of all participants. The judge is able to assess first-hand the demeanor of the panel members as they respond to questioning from the bench and counsel. Our role in the process is to review the results and ensure the military judge has not abused his or her discretion in reaching the findings and conclusions.

Id.

In requesting a new sentence hearing, or in the alternative a post-trial evidentiary hearing, Appellant asserts that during voir dire at Appellant’s court-martial, a panel member — Captain (Capt) Bell — failed to disclose an inelastic predisposition toward a punitive discharge. Had Appellant made a timely offer of evidence sufficient to support that assertion, I would agree that a post-trial evidentiary hearing would be appropriate; however, Appellant has not, and I do not.
Unlike the factual incongruity in Hum-pherys, susceptible of proof by resort to a verbatim record and a published rating chain or a completed evaluation report,[1] the misrepresentation Appellant claims is one of personal opinion or belief, allegedly stated in materially different terms, separated by approximately three weeks. Also unlike Hum-pherys, where the military judge, after being given dispositive evidence of material misstatements made during voir dire, convened a post-trial session to inquire into the eircum- *6 stances and effect of those misstatements, the military judge in this case was given no such opportunity. Instead, years later, we are asked to order a DuBay hearing on the basis of a counsel’s uncorroborated suggestion, in a carefully crafted declaration, that there may have been a material misstatement of opinion by a court member.
We have before us Appellant’s record of trial, in which Capt Bell is credited with a negative response to the question of inelastic predisposition; however, we have no evidence of Capt Bell’s answers at the subsequent trial of another airman, only the declaration of Capt Page, the detailed defense counsel in both proceedings, which loosely summarizes Capt Page’s impression of Capt Bell’s responses at that later proceeding. There is no statement from Capt Bell, and no transcript or tape recordings from the subsequent trial in which Capt Bell gave the allegedly contradictory response(s). There is no statement from anyone else present in the courtroom at those later proceedings, e.g., the civilian defense counsel, the court reporter, or the military judge. There is no evidence that Capt Page or the appellate defense counsel sought production of a partial transcript, or even the tapes, of that later proceeding. There is no evidence that Capt Page moved for a post-trial session or new trial under either Rule for Court Martial (R.C.M.) 1102 or R.C.M. 1210, respectively, despite the fact that the voir dire sessions were only about three weeks apart. Further, Capt Page did not bring this matter to the convening authority’s attention in his R.C.M. 1105 matters. Compounding this evi-dentiary vacuum — even if we were to assume that Capt Bell’s responses to questions on inelastic predisposition were materially different at the later proceeding — is that we are faced not with a failure to disclose a material matter of fact, but with a potential difference of opinion and, more importantly, with the question of when, if ever, Capt Bell’s opinion on the matter changed.
The declaration of Appellant’s trial defense counsel, signed ten months after that later proceeding, and nearly a year after our Humpherys decision, contains a rough account of Capt Bell’s voir dire responses at the second trial. Neither the defense counsel nor the appellate defense counsel claim the account was contemporaneously recorded, and neither offers any reason why, immediately following that second proceeding, with Appellant’s conviction and Capt Bell’s voir dire at Appellant’s trial fresh in his mind, Appellant’s defense counsel apparently did nothing. Now, however, wielding his defense counsel’s “officer of the court” status, Appellant asks this Court to order what his defense counsel could, and clearly should, have sought themselves while facts and memories were fresh, had they harbored any genuine belief in the merit of this issue.
Viewed benignly, the course chosen by the defense may reflect earnest, zealous representation, flavored with a bit of Steve Martin’s famous catchphrase, “I forgot.” It would not be untoward under the circumstances, however, to ask whether the defense intentionally delayed raising the issue until memories had dimmed, command interest had waned, and the cost and inconvenience of a DuBay hearing outweighed any perceived benefit to the Government. Be that as it may, when this Court, without requiring any explanation, embraces and rewards this practice, we ensure its emulation by subsequent appellants.
By conferring evidentiary status on the defense counsel’s unsupported, untimely, and conclusory declaration, the majority exalts his “officer of the court” status, while impugning the integrity of Capt Bell, who now, presumably, will be dragged into court to defend his honor against Appellant’s accusation that he lied under oath. It does not speak well of this Court to assign opprobrium to Capt Bell with so little cause. Not only would I follow Article 67, UCMJ, 10 U.S.C. § 867 (2000), in declining to find facts from Capt Page’s declaration, but, as a predicate to impeaching Capt Bell, I would require a satisfactory demonstration from appellate defense counsel of Capt Page’s efforts to: procure a verbatim transcript of the later voir dire; procure the tapes from which to make such a transcript; offer the statement of any other observer or participant in the courtroom; make a contemporaneous record *7 of Capt Bell’s responses; or seek a post-trial session under Article 39(a), UCMJ, 10 U.S.C. § 839(a)(2000), from the military judge or the convening authority. In short, I would require Appellant to meet the burden established by our precedent, consistent with the weight of federal case law.
In that regard, I cannot agree that Hum-pherys, Mack, and the bulk of the federal circuits support the remedy awarded to Appellant by the majority opinion. Every case cited by the majority (except United States v. Boylan, 898 F.2d 230 (1st Cir.1990), which examined the effect of extraneous information in the jury room) deals with questions of fact, susceptible of proof by resort to recorded testimony, court records, and other documentary evidence. Moreover, each of those cases examines a claim of juror misconduct raised either during trial or expeditiously thereafter — none addresses a delay of ten months from the time counsel learned of the potential misconduct to the time he raised that issue (notwithstanding numerous intervening opportunities to do just that). Even in the fact-based instances addressed by those decisions, none of the cases cited by the majority advances the proposition that an appellant is entitled to an evidentiary hearing pursuant to a mere claim of potential bias by a juror. In holding that the trial judge did not err in declining to hold such a hearing, the First Circuit said, “When a colorable claim of jury misconduct surfaces, the district court has broad discretion to determine the type of investigation which must be mounted. The trial judge may, but need not, convene a fullblown evidentiary hearing.” Boylan, 898 F.2d at 258 (internal citations omitted).
In denying Appellant’s request for an evi-dentiary hearing, I would apply the sound framework applied by the Eighth and Eleventh Circuits:
["]Examination of all of the cited authorities ... leads us to the conclusion that the cases fall along a continuum focusing on two factors. At one end of the spectrum the cases focus on the certainty that some impropriety has occurred. The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate ____ At the other end of the continuum lies the seriousness of the accusation. The more serious the potential jury contamination, especially where alleged extrinsic influence is involved, the heavier the burden to investigate.[”] In sum, the depth of investigation required depends on both the gravity of the alleged misconduct and the substantiality of the movant’s showing of misconduct.
United States v. Tucker, 137 F.3d 1016, 1031 (8th Cir.1998)(quoting United States v. Caldwell, 776 F.2d 989, 998 (11th Cir.1985)).
It is precisely the “substantiality of the mov-ant’s showing of misconduct” that we must question before we direct any remedy, even a fact-finding Article 39(a) session. To do otherwise is to establish that, despite circumstances suggesting intentional delay by Appellant and his counsel and, even when raised for the first time on appeal by affidavit alone, a conclusory suggestion of member misconduct is sufficient not only to shift to the Government the burden of proving that the suggestion is false, but to require the Government to conduct — at the least — a costly and time-consuming DuBay hearing.
Rather than bestow this new and undeserved remedy, I would invite defense counsel to fulfill their obligations as “officers of the court,” and share with this tribunal the evidence that supports their arguments, or, in its absence, evidence of their due diligence in attempting to procure it. At the very least, I would require the military judge, as a predicate to further fact-finding, to find that Capt Page made good faith efforts to procure the record at the time.

. In Mack, which we cited in Humpherys, the question before us was also one of fact, proved on appeal by resort to two authenticated records of trial by court-martial.