IN THE CASE OF

UNITED STATES, Appellee

v.

Michael J. SONEGO, Airman
U.S. Air Force, Appellant

No. 04-0480

Crim. App. No. S30216

United States Court of Appeals for the Armed Forces

Argued December 8, 2004

Decided April 1, 2005

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, C.J., and EFFRON and BAKER, JJ., joined. CRAWFORD, J.,
filed a dissenting opinion.

Counsel

For Appellant: Major Sandra K. Whittington (argued); Lieutenant
Colonel Carlos L. McDade, Major Antony B. Kolenc, Major Terry L.
McElyea, and Captain L. Martin Powell (on brief).

For Appellee: Captain Jin-Hwa L. Frazier (argued); Lieutenant
Colonel Robert V. Combs and Lieutenant Colonel Gary F. Spencer
(on brief); Major Shannon J. Kennedy.

Military Judge: Israel B. Willner

<u>**This opinion is subject to editorial correction before final publication**</u>.

United States v. Sonego, No. 04-0480/AF

Judge ERDMANN delivered the opinion of the Court.

Airman Michael Sonego entered a plea of guilty to wrongful use of ecstasy in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000).  He was sentenced by members to a bad-conduct discharge, restriction to the limits of Lackland Air Force Base for two months, forfeiture of $500 pay per month for twelve months, and a reduction in grade to E-1.  The convening authority approved only the bad-conduct discharge and partial forfeitures.  The findings and the approved sentence were affirmed by the United States Air Force Court of Criminal Appeals in an unpublished opinion.  United States v. Sonego, ACM S30216 (A.F. Ct. Crim. App. Apr. 28, 2004).

After Sonego's trial, his defense counsel discovered that one of the panel members may have failed to answer a question honestly during voir dire.  Voir dire is critical to the fairness of a court-martial.  United States v. Mack, 41 M.J. 51, 54 (C.M.A. 1994).  A defendant's right to a fair trial is undermined if panel members fail to answer material questions honestly during voir dire.  Id.  We granted review to determine whether Sonego was entitled to any post-trial relief.[1]

_____

[1] We granted review of the following issue:
    WHETHER APPELLANT IS ENTITLED TO AN IMPARTIAL SENTENCE
    REHEARING WHERE, DURING VOIR DIRE, A PANEL MEMBER
    FAILED TO DISCLOSE HIS BELIEF THAT EVERY SERVICEMEMBER
    WHO USES DRUGS SHOULD GET A PUNITIVE DISCHARGE.

2

BACKGROUND

Sonego was accused of taking two ecstasy pills on two consecutive days in January 2002. When questioned by investigators, he immediately confessed to his misconduct. At trial Sonego pleaded guilty and was sentenced by a panel of three officer members.

During voir dire, the military judge asked the standard voir dire questions found in the Military Judges' Benchbook. Legal Services, Dep't of the Army, Pamphlet 27-9, Military Judges' Benchbook ch. 2, § V, para. 2-5-1 (2001). Among the questions the military judge asked was:

> It is a ground for challenge if you have an inelastic predisposition toward the imposition of a particular punishment based solely on the nature of the crime for which the accused is to be sentenced. Does any member, having read the charge and specification[,] believe that you would be compelled to vote for any particular punishment solely because of the nature of the charge?

See id. Captain Bell, who was a potential member, answered "no" and was subsequently seated on the panel. He was not called for individual voir dire.

Bell was an active participant in the sentencing proceedings. When the first witness was testifying, Bell was the only panel member to respond to a question from the military judge about the members' ability to hear the testimony. During the defense's case, after Sonego's mother had testified about

3

Sonego's background and character, Bell asked the military judge whether the members would have access to documents that would show whether Sonego had used drugs before he enlisted in the Air Force.

During the deliberations the members sent a note to the military judge asking if there were any discharge options available other than a bad-conduct discharge. The military judge called the members in and explained that the only discharge option available to the court was a bad-conduct discharge. When the military judge asked if there were any further questions, Bell asked whether there would be mandatory confinement time associated with a punitive discharge. The military judge told the court that confinement was not required even if Sonego was sentenced to a bad-conduct discharge.

Nearly a month after the trial, Sonego's trial defense counsel, Captain Page, was representing another airman in a drug case when Bell was again selected to sit on the panel. During voir dire in the second case, Bell expressed a predisposition that any servicemember convicted of a drug offense should receive a bad-conduct discharge. Bell was subsequently challenged for cause and removed from the panel.

No transcript was made in the second case because it resulted in an acquittal, but Page later drafted a sworn declaration in which he recounted Bell's different responses in

the two cases.  Page's declaration did not include the specific wording of any questions asked of the panel in general or of Bell in particular.  On appeal to the Court of Criminal Appeals, Sonego requested a new sentence proceeding that was supported by Page's declaration.  That court denied the request on the ground that Sonego had not demonstrated that Bell failed to answer any question honestly.

Before this Court, Sonego argues that Bell failed to reveal his true beliefs during voir dire, and, that had he revealed his true feelings about drug use by members of the military, Bell could have been successfully challenged for cause.  Sonego argues that his sentence -- which included a bad-conduct discharge but no confinement -- was so moderate as to indicate that he might have avoided a punitive discharge altogether if Bell had not been a member of the panel.  Sonego further argues that he should be given a new sentence hearing, or, in the alternative, a trial-level evidentiary hearing to develop the facts further.

The Government's response was that Sonego is not entitled to a new sentence hearing or even an evidentiary hearing because he has not established that Bell failed to disclose information during voir dire.  The Government argues that the accused must make a prima facie showing of nondisclosure before an evidentiary hearing can be ordered.

United States v. Sonego, No. 04-0480/AF

DISCUSSION

In McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984), the United States Supreme Court set out the test for determining when a party is entitled to a new trial due to an incorrect voir dire response:  "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause."  We adopted this test in Mack, and held that "where a party asserts juror nondisclosure during voir dire as a ground for a new trial, the normal procedure is to remand the issue to the trial court for resolution."  41 M.J. at 55.  In United States v. Humpherys, we reiterated, "[A]n evidentiary hearing is the appropriate forum in which to develop the full circumstances surrounding each of [the Mack/McDonough] inquiries."  57 M.J. 83, 96 (C.A.A.F. 2002).  We did not order an evidentiary hearing in Humpherys, however, because the military judge had already conducted a post-trial session under Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), after which he applied the McDonough test.  57 M.J. at 95.

Although an evidentiary hearing is the usual procedure for resolving claims of juror dishonesty, we have not had the occasion to address the measure of proof required to trigger an

6

evidentiary hearing. The measure of proof required to trigger a McDonough evidentiary hearing is a question where the federal circuits have differed. Of the eight circuits that have addressed this issue, six have adopted a standard that requires something less than proof of juror dishonesty before a hearing is convened. See United States v. Carpa, 271 F.3d 962, 967 (11th Cir. 2001); Pope v. Man-Data, Inc., 209 F.3d 1161, 1163 (9th Cir. 2000); United States v. Tucker, 137 F.3d 1016, 1026 (8th Cir. 1998); United States v. Boney, 977 F.2d 624, 634-35 (D.C. Cir. 1992); United States v. Boylan, 898 F.2d 230, 258 (1st Cir. 1990); United States v. Cattle King Packing Co., Inc., 793 F.2d 232, 243 (10th Cir. 1986).

While some of the circuits have declined to establish a particular test, choosing instead to leave the decision within the broad discretion of the deciding court, the Ninth Circuit has held that "'[a] court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances.'" Pope, 209 F.3d at 1163 (quoting Dyer v. Calderon, 151 F.3d 970, 974 (9th Cir. 1998)). The First Circuit has also adopted the "colorable claim" rule. See Boylan, 898 F.2d at 258. The Eighth Circuit has held that "a movant who makes a sufficient showing of McDonough-type irregularities is

entitled to the court's help in getting to the bottom of the matter."  Tucker, 137 F.3d at 1026.[2]

The standard urged by the Government -- a prima facie showing -- would swallow the first prong of the McDonough test. It is unreasonable to expect an appellant to produce prima facie proof of juror dishonesty without the benefit of an evidentiary hearing or other fact-finding procedure where the evidence may be fully developed.  We conclude that the "colorable claim" test used by the First and Ninth Circuits provides the better test because it eliminates frivolous claims but keeps the door open for claims that may prove valid upon further examination.  This Court has adopted the "colorable claim" test in other contexts. See, e.g., United States v. Taylor, 60 M.J. 190, 195 (C.A.A.F. 2004) (prejudice due to post-trial error); United States v. Campbell, 57 M.J. 134, 138 (C.A.A.F. 2002) (appellate discovery); United States v. Douglas, 56 M.J. 168, 170 (C.A.A.F. 2001) (violation of rights under United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982)); United States v. Diaz-Duprey, 51 M.J. 168 (C.A.A.F. 1999) (ineffective assistance of counsel).

---

[2] Unlike the First, Eighth, Ninth, Tenth, Eleventh and District of Columbia Circuits, the Second Circuit has held that a post-trial hearing is only necessary if the party requesting the hearing can produce "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant."  United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) (citation omitted).  The Fifth Circuit requires that the movant establish a prima facie case under McDonough before an evidentiary hearing is required.  Montoya v. Scott, 65 F.3d 405, 420 (5th Cir. 1995).

United States v. Sonego, No. 04-0480/AF

Here, Sonego has made a colorable claim of juror dishonesty. His attorney, an officer of the court, has declared under penalty of perjury that a panel member provided a contradictory voir dire response on a critical issue less than one month after Sonego's trial.[3] The Government argues that this proof falls short because Sonego has not and cannot establish what Bell was thinking when he answered "no" to the voir dire question. It is true that Sonego's proof does not provide prima facie evidence that Bell failed to answer the voir dire question honestly. It does, however, provide a colorable claim sufficient to trigger an evidentiary hearing. It is a question of fact whether Bell answered honestly when he was questioned about his predispositions and Sonego is entitled to an evidentiary hearing at which he can fully develop the answer to this question.

Thus, the Air Force court erred by failing to order an evidentiary hearing in accordance with United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to the convening authority to order a hearing to resolve questions

---

[3] The parties do not dispute that an inelastic predisposition toward a particular punishment is a valid basis for a challenge for cause. United States v. Tippit, 9 M.J. 106 (C.M.A. 1980).

9

of fact and make conclusions of law with respect to whether the McDonough test for a new trial due to juror nondisclosure during voir dire has been met.  Upon completion of these proceedings, the record, along with the military judge's findings of fact and conclusions of law, shall be returned to the convening authority for further consideration and action, to include setting aside the original action and ordering a new sentence hearing, if appropriate.

In the event that the convening authority deems such a hearing impracticable, the convening authority shall set aside the action and either order a rehearing on the sentence or take action approving a sentence of no punishment.

Upon completion of proceedings below, the record of trial shall be sent directly to the Air Force Court of Criminal Appeals for review.  Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2000), shall apply.

CRAWFORD, Judge (dissenting):

As I am unwilling to abandon precedent and arbitrarily reassign appellate burdens, I cannot join the majority in rewarding Appellant for what I view as the certainly questionable -- and potentially "sharp" -- practice of defense counsel in both the timing and substance of this issue. Viewed from any angle, Appellant has failed to meet his burden in two regards: he has not acted in a timely manner, and he has not "demonstrate[d] that a [panel member] failed to answer honestly a material question on voir dire." McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984). Because we necessarily encourage repetition of those practices we reward, I must respectfully dissent from the majority's remand for a proceeding under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). Not only is this remand based entirely on one counsel's belated, conclusory recollection of an opinion voiced in an unrecorded proceeding, but that same counsel's unexplained delay in raising the issue has effectively denied any opportunity for the Government to preserve evidence of the "facts" on which Appellant now relies.

In United States v. Humpherys, 57 M.J. 83, 96 (C.A.A.F. 2002), this Court examined, for abuse of discretion, a military judge's denial of a motion for new trial based on a material misstatement by a court member during voir dire involving the

denial of a rating-chain relationship.  Applying the test

prescribed by the United States Supreme Court, we held in

Humpherys that:

> [w]hen a panel member fails to disclose information
> during voir dire, the defendant must make two showings
> in order to receive a new trial.  "'[A] party must
> first demonstrate that a [panel member] failed to
> answer honestly a material question on voir dire, and
> then further show that a correct response would have
> provided a valid basis for a challenge for cause.'
> McDonough Power Equipment, Inc. v. Greenwood, 464 U.S.
> [548,] 556 [(1984)]."  United States v. Mack, 41 M.J.
> 51, 55 (C.M.A. 1994).  We have noted that an
> evidentiary hearing is the appropriate forum in which
> to develop the full circumstances surrounding each of
> these inquiries.  Id. at 55-56.

57 M.J. at 96 (citation omitted).

Unlike Appellant's case, in Humpherys the material

misstatement was one of fact, as opposed to opinion, and was

brought to the military judge's attention soon after its

discovery.  Emphasizing the importance of timely action by

counsel, this Court explained the benefits that timeliness

offers the truth-finding process:

> The post-trial process empowers the military judge to
> investigate and resolve allegations, such as those in
> this case, by interviewing the challenged panel
> members.  It allows the judge to accomplish this task
> while the details of trial are still fresh in the
> minds of all participants.  The judge is able to
> assess first-hand the demeanor of the panel members as
> they respond to questioning from the bench and
> counsel.  Our role in the process is to review the
> results and ensure the military judge has not abused
> his or her discretion in reaching the findings and
> conclusions.

Id.

In requesting a new sentence hearing, or in the alternative a post-trial evidentiary hearing, Appellant asserts that during voir dire at Appellant's court-martial, a panel member -- Captain (Capt) Bell -- failed to disclose an inelastic predisposition toward a punitive discharge. Had Appellant made a timely offer of evidence sufficient to support that assertion, I would agree that a post-trial evidentiary hearing would be appropriate; however, Appellant has not, and I do not.

Unlike the factual incongruity in Humpherys, susceptible of proof by resort to a verbatim record and a published rating chain or a completed evaluation report,[1] the misrepresentation Appellant claims is one of personal opinion or belief, allegedly stated in materially different terms, separated by approximately three weeks. Also unlike Humpherys, where the military judge, after being given dispositive evidence of material misstatements made during voir dire, convened a post-trial session to inquire into the circumstances and effect of those misstatements, the military judge in this case was given no such opportunity. Instead, years later, we are asked to order a DuBay hearing on the basis of a counsel's uncorroborated suggestion, in a

---

[1] In Mack, which we cited in Humpherys, the question before us was also one of fact, proved on appeal by resort to two authenticated records of trial by court-martial.

carefully crafted declaration, that there may have been a material misstatement of opinion by a court member.

We have before us Appellant's record of trial, in which Capt Bell is credited with a negative response to the question of inelastic predisposition; however, we have no evidence of Capt Bell's answers at the subsequent trial of another airman, only the declaration of Capt Page, the detailed defense counsel in both proceedings, which loosely summarizes Capt Page's impression of Capt Bell's responses at that later proceeding. There is no statement from Capt Bell, and no transcript or tape recordings from the subsequent trial in which Capt Bell gave the allegedly contradictory response(s). There is no statement from anyone else present in the courtroom at those later proceedings, e.g., the civilian defense counsel, the court reporter, or the military judge. There is no evidence that Capt Page or the appellate defense counsel sought production of a partial transcript, or even the tapes, of that later proceeding. There is no evidence that Capt Page moved for a post-trial session or new trial under either Rule for Court Martial (R.C.M.) 1102 or R.C.M. 1210, respectively, despite the fact that the voir dire sessions were only about three weeks apart. Further, Capt Page did not bring this matter to the convening authority's attention in his R.C.M. 1105 matters. Compounding this evidentiary vacuum -- even if we were to assume that Capt Bell's responses to

4

questions on inelastic predisposition were materially different at the later proceeding -- is that we are faced not with a failure to disclose a material matter of fact, but with a potential difference of opinion and, more importantly, with the question of when, if ever, Capt Bell's opinion on the matter changed.

The declaration of Appellant's trial defense counsel, signed ten months after that later proceeding, and nearly a year after our Humpherys decision, contains a rough account of Capt Bell's voir dire responses at the second trial. Neither the defense counsel nor the appellate defense counsel claim the account was contemporaneously recorded, and neither offers any reason why, immediately following that second proceeding, with Appellant's conviction and Capt Bell's voir dire at Appellant's trial fresh in his mind, Appellant's defense counsel apparently did nothing. Now, however, wielding his defense counsel's "officer of the court" status, Appellant asks this Court to order what his defense counsel could, and clearly should, have sought themselves while facts and memories were fresh, had they harbored any genuine belief in the merit of this issue.

Viewed benignly, the course chosen by the defense may reflect earnest, zealous representation, flavored with a bit of Steve Martin's famous catchphrase, "I forgot." It would not be untoward under the circumstances, however, to ask whether the

5

defense intentionally delayed raising the issue until memories had dimmed, command interest had waned, and the cost and inconvenience of a DuBay hearing outweighed any perceived benefit to the Government. Be that as it may, when this Court, without requiring any explanation, embraces and rewards this practice, we ensure its emulation by subsequent appellants.

By conferring evidentiary status on the defense counsel's unsupported, untimely, and conclusory declaration, the majority exalts his "officer of the court" status, while impugning the integrity of Capt Bell, who now, presumably, will be dragged into court to defend his honor against Appellant's accusation that he lied under oath. It does not speak well of this Court to assign opprobrium to Capt Bell with so little cause. Not only would I follow Article 67, UCMJ, 10 U.S.C. § 867 (2000), in declining to find facts from Capt Page's declaration, but, as a predicate to impeaching Capt Bell, I would require a satisfactory demonstration from appellate defense counsel of Capt Page's efforts to: procure a verbatim transcript of the later voir dire; procure the tapes from which to make such a transcript; offer the statement of any other observer or participant in the courtroom; make a contemporaneous record of Capt Bell's responses; or seek a post-trial session under Article 39(a), UCMJ, 10 U.S.C. § 839(a)(2000), from the military judge or the convening authority. In short, I would require

Appellant to meet the burden established by our precedent, consistent with the weight of federal case law.

In that regard, I cannot agree that Humphreys, Mack, and the bulk of the federal circuits support the remedy awarded to Appellant by the majority opinion. Every case cited by the majority (except United States v. Boylan, 898 F.2d 230 (1st Cir. 1990), which examined the effect of extraneous information in the jury room) deals with questions of fact, susceptible of proof by resort to recorded testimony, court records, and other documentary evidence. Moreover, each of those cases examines a claim of juror misconduct raised either during trial or expeditiously thereafter -- none addresses a delay of ten months from the time counsel learned of the potential misconduct to the time he raised that issue (notwithstanding numerous intervening opportunities to do just that). Even in the fact-based instances addressed by those decisions, none of the cases cited by the majority advances the proposition that an appellant is entitled to an evidentiary hearing pursuant to a mere claim of potential bias by a juror. In holding that the trial judge did not err in declining to hold such a hearing, the First Circuit said, "When a colorable claim of jury misconduct surfaces, the district court has broad discretion to determine the type of investigation which must be mounted. The trial judge may, but

need not, convene a fullblown evidentiary hearing." Boylan, 898

F.2d at 258 (internal citations omitted).

In denying Appellant's request for an evidentiary

hearing, I would apply the sound framework applied by the Eighth

and Eleventh Circuits:

> ["]Examination of all of the cited authorities . . .
> leads us to the conclusion that the cases fall along a
> continuum focusing on two factors. At one end of the
> spectrum the cases focus on the certainty that some
> impropriety has occurred. The more speculative or
> unsubstantiated the allegation of misconduct, the less
> the burden to investigate . . . . At the other end of
> the continuum lies the seriousness of the accusation.
> The more serious the potential jury contamination,
> especially where alleged extrinsic influence is
> involved, the heavier the burden to investigate.["]
> In sum, the depth of investigation required depends on
> both the gravity of the alleged misconduct and the
> substantiality of the movant's showing of misconduct.

United States v. Tucker, 137 F.3d 1016, 1031 (8th Cir.

1998)(quoting United States v. Caldwell, 776 F.2d 989, 998 (11th

Cir. 1985)).

It is precisely the "substantiality of the movant's showing

of misconduct" that we must question before we direct any

remedy, even a fact-finding Article 39(a) session. To do

otherwise is to establish that, despite circumstances suggesting

intentional delay by Appellant and his counsel and, even when

raised for the first time on appeal by affidavit alone, a

conclusory suggestion of member misconduct is sufficient not

only to shift to the Government the burden of proving that the

suggestion is false, but to require the Government to conduct --
at the least -- a costly and time-consuming DuBay hearing.

Rather than bestow this new and undeserved remedy, I would
invite defense counsel to fulfill their obligations as "officers
of the court," and share with this tribunal the evidence that
supports their arguments, or, in its absence, evidence of their
due diligence in attempting to procure it.  At the very least, I
would require the military judge, as a predicate to further
fact-finding, to find that Capt Page made good faith efforts to
procure the record at the time.