# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39289**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Michael B. CARTER**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 October 2018

————————————

*Military Judge:* Christopher A. Santoro.

*Approved sentence:* Dishonorable discharge, confinement for 10 years, and reduction to E-1. Sentence adjudged 12 April 2017 by GCM convened at Royal Air Force Mildenhall, United Kingdom.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, HARDING, and MINK, *Appellate Military Judges.*

Judge MINK delivered the opinion of the court, in which Chief Judge MAYBERRY and Senior Judge HARDING[1] joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

[1] Senior Judge Harding participated in this decision prior to his retirement.

MINK, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of one specification of attempted sexual abuse of a child by communicating indecent language and one specification of possessing and viewing child pornography, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934. The military judge sentenced Appellant to a dishonorable discharge, confinement for ten years, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged, after having deferred the reduction in grade until action and waived the mandatory forfeitures for a period of six months or expiration of term of service, whichever is sooner, for the benefit of Appellant's spouse and dependent children.

On appeal, Appellant raises three issues: (1) whether the military judge committed prejudicial error by admitting victim impact evidence under Rule for Courts-Martial (R.C.M.) 1001A; (2) whether the Government prevented Appellant from assisting in his own defense in violation of the Sixth Amendment[2] when the Government took and refused to return his copy of the record of trial; and (3) whether his sentence is inappropriately severe.[3] In light of the holding of the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Barker*, 77 M.J. 377 (C.A.A.F. 2018), we find the military judge erred in admitting the victim impact evidence under R.C.M. 1001A. Since the error substantially influenced the sentence to the prejudice of Appellant, we reassess the sentence. Finding no other prejudicial error, we affirm the findings and sentence as reassessed.

## I. BACKGROUND

In April 2016, Appellant, a 39-year-old Master Sergeant assigned to Royal Air Force (RAF) Mildenhall, United Kingdom (UK), was on temporary duty to Hurlburt Field, Florida. While there, he discovered a personal advertisement on the Internet entitled "military dependant [sic] lookin [sic] for company (lakenheath/mildenhal [sic]) – w4m"[4] on the "Casual Encounters" section of Craigslist.[5] Appellant responded to the advertisement and began an email conversation with an individual who identified herself as "Stacey," a 14-year-old dependent child living on RAF Mildenhall. Unbeknownst to Appellant,

---

[2] U.S. CONST. amend. VI.

[3] Appellant personally raises the third issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] The acronym "w4m" is generally understood to refer to "woman for man."

[5] Craigslist is a website that hosts classified advertisements and discussion forums.

"Stacey" was in fact an agent of the Air Force Office of Special Investigations (AFOSI) pretending to be "Stacey" as part of an undercover law enforcement operation designed to catch sexual predators targeting children. At Appellant's suggestion, Appellant and "Stacey" switched from communicating by email to Kik, a cellphone text messaging application. Appellant offered to bring something back to RAF Mildenhall for her, and "Stacey" told him that she wanted a new bathing suit. Appellant purchased two bathing suits which he brought back to RAF Mildenhall with him and continued text messaging with "Stacey." Their electronic text communications continued for approximately one month, during which Appellant used a variety of terms and language to describe the sexual acts he would like to perform on "Stacey" and described for her different objects that she could use to masturbate. After AFOSI's efforts to set up a meeting between Appellant and "Stacey" were unsuccessful, Appellant was brought into the AFOSI office and questioned about his conversations with "Stacey." At all times prior to being brought into the AFOSI office, Appellant believed "Stacey" was a 14-year-old child.

AFOSI agents also searched Appellant's cellular phone and his residence, where the agents discovered the two bathing suits Appellant had purchased for "Stacey" as well as what appeared to be child pornography. AFOSI seized numerous items of electronic media, including computer hard drives, cellular phones, floppy disks, DVDs,[6] tablet computers, and memory cards. Investigators examined a total of 67 items of electronic media belonging to Appellant, 25 of which contained files with images or videos depicting sexual acts with children, some involving infants. AFOSI Special Agent BCS testified during Appellant's court-martial that the electronic media seized from Appellant contained thousands of images appearing to be child pornography. The National Center for Missing and Exploited Children (NCMEC) identified more than 16,000 images or videos that contained known victims of child pornography on the electronic media seized from Appellant.

On notice that the Government intended to offer victim impact statements from some of the victims of the child pornography during the Government's sentencing case, Appellant's trial defense counsel filed a written motion in limine prior to trial. The motion sought "to preclude trial counsel from presenting impermissible sentencing evidence in the form of unsworn victim impact letters and testimony from law enforcement case agents." Among the multiple grounds cited for exclusion of the victim statements, Appellant's trial defense counsel highlighted the lack of participation by any of the victims:

---

[6] The acronym "DVDs" is generally understood to refer to "digital video discs."

> [These] statements lack foundation for personal knowledge about this case. [R.C.M.] 1001A(e)(1) envisions, after the announcement of findings, a "victim who would like to present an unsworn statement" providing to the court a copy of the statement. That implies active involvement in this *specific* case by an interested victim. It also implies the court is able to assess the identity of the victim and how that person relates to the proceedings. In this case, there is no indication that any purported victim wants to present an unsworn statement—or even that any know about the case and their rights with respect to it. Instead, trial counsel would be offering old, recirculated letters from past cases.

During the presentencing portion of Appellant's court-martial, pursuant to R.C.M. 1001A, the Government offered unsworn written statements of victims associated with three distinct NCMEC series of child pornography—the "Jan_Feb" series, the "Vicky" series, and the "Cindy" series. Appellant pleaded guilty to and was found guilty of possessing and viewing images from these three series. Pursuant to R.C.M. 1001A, the Government also offered the unsworn written statement of a police detective from the UK that he had prepared at the direction of the family of another known victim of child pornography, identified as "Vicki." Appellant pleaded guilty to and was found guilty of possessing and viewing images from the "Vicki" series.

Apparently in lieu of notification to these victims of their rights to be reasonably heard at this sentencing hearing pursuant to Article 6b, UCMJ, 10 U.S.C. § 806b, and R.C.M. 1001A, the Government relied on the law enforcement agents for each of the three NCMEC child pornography series and the UK police detective for the "Vicki" series to attempt to meet the requirements of R.C.M. 1001A. The case agents and the detective were called as Government sentencing witnesses. Through the testimony of the agents, the Government established that each victim generally desired to have her respective unsworn written statement "heard" by sentencing authorities in cases where a defendant had been convicted of a child pornography offense or offenses involving the NCMEC series that pertained to her. Similarly, the Government established through the testimony of the UK police detective that "Vicki" and her family generally desired to have him provide victim impact information on their behalf in legal proceedings associated with the child pornography in which she was the victim. The UK detective also testified that the victim's family had designated him as "power of attorney" for "proceedings like this" at some point in time.

Over trial defense counsel's objections, the law enforcement case agent for the "Jan_Feb" series testified that the abuse depicted in the "Jan_Feb" series

occurred when the victim was six years old and that he first met the victim when she was approximately nine or ten years old. In 2008, the victim's mother prepared a statement on behalf of the victim intended for use in judicial proceedings. The statement described the impact that the creation and existence of the "Jan_Feb" series had on the victim up to that point in time. The agent testified that he had contacted the victim approximately 10 months prior to Appellant's court-martial seeking a statement from her as an adult. He testified the victim would turn 21 years old in April 2017 and was a college student. The case agent stated the victim told him she intended to create a new impact statement in the future, but until then she wanted her mother's 2008 statement to be used. However, the case agent testified that he did not know whether or not the victim was aware of Appellant's court-martial.

The military judge also heard the testimony of the law enforcement case agents for the "Vicky" series[7] and the "Cindy" series,[8] and the testimony of the UK detective who investigated the "Vicki" series.[9] After hearing the testimony of each and reviewing the unsworn statements that each identified pertaining to the respective victim, the military judge found that each of the victims who appeared in an image of child pornography was a "victim" for purposes of R.C.M. 1001A, as was the parent or stepparent of those individuals. The military judge also determined that each of the law enforcement case agents could testify about any victim impact that they personally observed, and the military judge relied on their testimony to establish the foundation for admission of the victims' unsworn statements. The military judge further found that the UK

---

[7] The case agent for the "Vicky" series testified that the victim was 10 and 11 years old when she appeared in the images. The agent testified that he was first contacted regarding this series in 2004 and that he met the victim at some point during the investigation. By the time of Appellant's trial, the victim was an adult, though the record does not specifically state her age. The agent testified that he was aware of the victim's intent to have an unsworn statement considered in future cases, but there was no evidence in the record that the victim was aware of Appellant's case.

[8] The case agent for the "Cindy" series testified that the victim was approximately 30 years old at the time of Appellant's trial. The agent testified that he was aware of the victim's intent to have an unsworn statement considered in future cases but did concede that he had not communicated with the victim in the four years preceding Appellant's trial. Thus, there was no evidence the victim was aware of Appellant's case.

[9] The detective who investigated the "Vicki" series testified that he last spoke to the victim in 2001 and to her mother in 2004. The detective testified that the victim was an adult at the time of Appellant's trial. The detective further testified he did not know whether the victim was even aware that pictures of her were on the Internet or about any victim impact on her as a result of her pictures being on the Internet. Consequently, there was no evidence that the victim knew of Appellant's offenses or his trial.

detective could act as a representative for the victim in the "Vicki" series because the UK detective's testimony that he had been given "power of attorney" by the victim's family was unrebutted.

In sum, over the objection of the trial defense counsel, the military judge relied on the testimony of the law enforcement case agents to authenticate the statements as having been written by the victims and treated the UK detective as the designee for the victim in the "Vicki" series, even though each victim was an adult by the time of Appellant's trial and there was no evidence to suggest that any of the victims was incapacitated or incompetent. The military judge then admitted the written unsworn statements of the victims, including the parent and stepparent of one of the victims, and of the UK police detective as prosecution exhibits. After admitting the victim impact statements, the military judge limited the portions he would consider to those portions of the statements relating directly to the impact of Appellant's offenses on the victims.

## II. DISCUSSION

### A. Rule for Courts-Martial 1001A

#### 1. Law

"Interpreting R.C.M. 1001A is a question of law, which we review de novo." *Barker*, 77 M.J. at 382 (citation omitted). However, we review a military judge's decision to admit a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion. *Id.* at 383 (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).[10] A military judge abuses his discretion when his decision to permit such a statement is based on an erroneous view of the law. *Id.* (citing *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013)).

R.C.M. 1001A(e) provides that during presentencing proceedings, the victim of an offense of which the accused has been found guilty:

> [M]ay make an unsworn statement and may not be cross-examined by the trial counsel or defense counsel upon it or examined upon it by the court-martial. The prosecution or defense may,

---

[10] Appellate courts review a military judge's decision to admit evidence for an abuse of discretion. *See, e.g.*, *Humpherys*, 57 M.J. at 90. In *United States v. Hamilton*, this court held that victim impact statements offered pursuant to R.C.M. 1001A are not "evidence" but nevertheless applied the abuse of discretion standard in reviewing the military judge's decision to allow such statements to come before the court. 77 M.J. 579, 585 (A.F. Ct. Crim. App. 2017) (en banc), *rev. granted*, 77 M.J. 368 (C.A.A.F. 2018). When the CAAF applied the abuse of discretion standard in *Barker*, it assumed without deciding that such statements are evidence but noted it would decide that question in its review of *Hamilton*. *Barker*, 77 M.J. at 383 n. 9.

> however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both. When a victim is under 18 years of age, incompetent, incapacitated, or deceased, the unsworn statement may be made by the victim's designee appointed under R.C.M. 801(a)(6). Additionally, a victim under 18 years of age may elect to make an unsworn statement.

*See also* Article 6b, UCMJ, 10 U.S.C. § 806b(a)(4)(B) (stating the victim of an offense under the UCMJ has a right to be reasonably heard at a sentencing hearing). "[T]he rights vindicated by R.C.M. 1001A are personal to the victim in each individual case." *Barker*, 77 M.J. at 382.

The CAAF further noted:

> All of the procedures in R.C.M. 1001A contemplate the actual participation of the victim, and the statement being offered by the victim or through her counsel. Moreover, they assume the victim chooses to offer the statement for a particular accused, as they permit only the admission of information on victim impact "directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

*Barker*, 77 M.J. at 383. "Therefore, the introduction of statements under this rule is prohibited without, at a minimum, either the presence or request of the victim, the special victim's counsel, or the victim's representative." *Id*. at 382

**2. Analysis**

In this case, the Government attempted to meet the presence or request of the victim requirement by calling the case agents and the UK detective who had met with the victims in the past and had general knowledge of their intent to have their written statements be considered in future cases or, regarding the UK detective, to make a statement on the victim's behalf. The military judge then relied on the testimony of the case agents to authenticate the victim impact statements and decided to admit the UK detective's statement as a representative of the victim based on the "power of attorney" granted by the victim's family. However, the military judge did not follow the procedure to determine the appointment of a designee described in R.C.M. 1001A(e) and R.C.M. 801(a)(6). There is no evidence in the record of trial that the victims, even though all adults at the time of Appellant's trial, were contacted by the trial counsel or the case agents or the UK detective with a view toward this particular trial.

As the CAAF stated in *Barker*, it is likewise in this case that:

> [T]his approach ignores the requirement of Article 6b, UCMJ, that victims be contacted and have the choice to participate and

be consulted in cases where they are victims. Article 6b(a)(2)−(5), UCMJ. It further ignores the fact that the R.C.M. 1001A process belongs to the victim, not to the trial counsel. R.C.M. 1001A(a).

77 M.J. at 383.

Furthermore, all of the victim impact statements, although admitted under R.C.M. 1001A, were marked as prosecution exhibits. As this court observed in *United States v. Hamilton*:

> Trial practitioners must recognize the distinction between evidence offered and admitted during presentencing by the prosecution and defense under R.C.M. 1001 and victim impact statements offered under R.C.M. 1001A. The victim "shall be *called by the court-martial*" as their right to be heard is "*independent* of whether they testify during findings or are *called to testify under R.C.M. 1001*." R.C.M. 1001A(a) (emphasis added).

77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017) (en banc), *rev. granted*, 77 M.J. 271 (C.A.A.F. 2018).

Exhibits presented under R.C.M. 1001A should be marked as court exhibits.[11] In this case, however, marking the victim impact statements as prosecution exhibits accurately captured how they were admitted—these exhibits were offered by the Government during *its* sentencing case. Effectively, trial counsel appropriated the victims' rights under R.C.M. 1001A in order to admit the victims' statements as evidence in aggravation. This use of R.C.M. 1001A by the trial counsel is impermissible; "the R.C.M. 1001A process belongs to the victim, not to the trial counsel." *Barker*, 77 M.J. at 383 (citation omitted). Trial counsel's proper role under R.C.M. 1001A is to "ensure the victim is aware of the opportunity to exercise" the right to be heard at a sentencing hearing, not to ensure the right is exercised. R.C.M. 1001A(a).

The three victims from the NCMEC series and the victim from the "Vicki" series involved in Appellant's offenses did not participate in the proceedings, and there is no indication that any of the victims were aware of Appellant's trial. Most importantly, the unsworn statements were not offered by the victims—all adults at the time of Appellant's trial—and the law enforcement agents were not designated to exercise the victims' right to be reasonably heard at Appellant's sentencing. Only the UK detective, who had been granted "power of attorney" from the family of the victim in the "Vicki" series, was

---

[11] As this court also stated in *Hamilton*, "We recommend these types of exhibits be marked as court exhibits in accordance with the *Uniform Rules of Military Practice Before Air Force Courts-Martial*, Rule 7.1(C) (1 Jan. 2017)." 77 M.J. at 586.

treated by the military judge as having authority to speak on behalf of the victim, but there was no evidence that the "power of attorney" in this case comported with the requirements of R.C.M. 1001A(e) and R.C.M. 801(a)(6). Thus, we conclude the military judge abused his discretion by admitting the unsworn victim impact statements under R.C.M. 1001A.

When there is error regarding the admission of victim impact statements under R.C.M. 1001A, "the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *Barker*, 77 M.J. at 384 (citation omitted). Usually, when determining whether an error substantially influenced a sentence, this court considers the following factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

While we would ordinarily analyze the error in Appellant's case by considering these four factors, we find it unnecessary to do so in view of the military judge's statements after announcement of the sentence. Anticipating that his consideration of the victim impact evidence might be the subject of appellate review, the military judge stated:

> In the event there is any appellate review of this case and in the event an appellate court conclude [sic] that I erred in my consideration of either the written victim impact statements or the oral testimony of the law enforcement agents about the victim impact, in the event that none of that evidence was considered by me as a sentencing authority the sentence adjudged would have been no less than reduction to the grade of E-1, dishonorable discharge, and confinement for 9 years.

Based on this statement, we find that the military judge's erroneous consideration of the victim impact evidence had a substantial impact on the adjudged sentence to the prejudice of Appellant. As a result, we consider whether we should reassess the sentence or return the case for a sentence rehearing. We are confident that we can accurately reassess an appropriate sentence in this case.

### 3. Sentence Reassessment

This court has "broad discretion" in deciding to reassess a sentence to cure error as well as in arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). To reassess the sentence, we must be able to reliably conclude that, in the absence of error, the sentence "would have been at least of a certain magnitude," and the reassessed sentence must be "no greater than that which would have been imposed if the prejudicial error had

not been committed." *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A. 1986). "The standard for reassessment is not what would be imposed at a rehearing but what would have been imposed at the original trial absent the error." *United States v. Taylor*, 47 M.J. 322, 325 (C.A.A.F. 1997) (citations omitted). As required by Article 66(c), UCMJ, a reassessed sentence "must be purged of prejudicial error and also must be 'appropriate' for the offense[s] involved." *Sales*, 22 M.J. at 308.

In determining whether to reassess a sentence or order a rehearing, we consider the totality of the circumstances, including the following illustrative, but not dispositive, factors: (1) "[d]ramatic changes in the penalty landscape and exposure," (2) the forum, (3) whether the offenses remaining after we have corrected the error capture the gravamen of the criminal conduct included within the original offenses, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we, as appellate judges, "have the experience and familiarity with to reliably determine what sentence would have been imposed at trial" by the sentencing authority. *Winckelmann*, 73 M.J. at 15–16 (citations omitted).

We are mindful that the penalty landscape and exposure has not changed; the forum was military judge alone; the offenses of which Appellant was convicted remain the same; and significant aggravating evidence presented during Appellant's court-martial remains admissible and relevant. Additionally, this court has extensive experience and familiarity with reviewing sentences for Appellant's offenses, sufficient for us to reliably determine what sentence would have been imposed by the military judge, particularly in light of the military judge's own statements following his announcement of the sentence. In consideration of these factors, we readily conclude that we can reassess the sentence in this case.

Therefore, considering the facts of Appellant's case, the totality of the circumstances, and particularly the statement of the military judge following his announcement of the sentence, we find we are able to determine to our satisfaction that, "absent any error, the sentence adjudged would have been of at least a certain severity . . . ." *Sales*, 22 M.J. at 308 (C.M.A. 1986). Accordingly, we reassess Appellant's sentence to the same sentence that the military judge stated he would have imposed in the absence of his erroneous consideration of the victim impact statements: a dishonorable discharge, confinement for nine years, and reduction to the grade of E-1.

**B. Appellant's Copy of the Record of Trial**

Appellant next asserts that the Government prevented him from assisting in his own defense in violation of the Sixth Amendment[12] by taking and refusing to return his copy of the record of trial while he has been confined in the Naval Consolidated Brig Miramar (Miramar Brig). In support of this alleged error filed with this court on 8 May 2018, Appellant submitted a declaration dated 3 May 2018, describing how his record of trial and other unspecified legal documents had been taken from him by officials at the Miramar Brig upon his arrival there on 1 August 2017. He asserted that despite three requests for the documents' return, he had still not received the record or the other legal documents.

In his brief, Appellant asks this court to: (1) direct the Government to show cause concerning the whereabouts of Appellant's copy of the record of trial and other legal documents, why they were withheld, why they have not been returned, and provide a timeline for when they will be returned; (2) return Appellant's copy of the record of trial and the other legal documents; (3) provide Appellant with a new copy of the record of trial if his cannot be located; (4) allow Appellant 30 days after he receives his record of trial to file any supplemental assignments of error; and (5) ensure timely appellate review.

In its 7 June 2018 response to Appellant's assignments of error, the Government acknowledged that Appellant's record of trial had been confiscated upon his arrival by the Miramar Brig officials to review it for any contraband material and then officials at the Brig had been unable to locate it. However, the Government asserted that Appellant's record of trial had been discovered in the office of the Air Force liaison officer at the Miramar Brig on 7 May 2018, reviewed, and then provided to Appellant. The Government submitted declarations from both the Miramar Brig's Parole and Release Director and the Air Force liaison officer stating that Appellant's record of trial had been located on 7 May 2018 and subsequently provided to Appellant.[13]

On 14 June 2018, Appellant submitted a reply brief responding to the Government's arguments regarding the military judge's consideration of victim impact statements pursuant to R.C.M. 1001A. We find it significant that in his reply brief, Appellant did not respond to the Government's arguments regarding the issue of his missing record of trial or contest the assertion that Appellant had been provided a copy of his record of trial on or after 7 May 2018. We

---

[12] U.S. CONST. amend. VI.

[13] Having applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), and having considered the entire record of Appellant's trial, we find we can resolve this issue raised by Appellant without additional fact-finding.

also find it significant that in the more than 120 days that have passed since Appellant submitted his reply brief on 14 June 2018, this court has received no request from Appellant to submit any additional assignment of error for review, including any additional assignment of error raised pursuant to *Grostefon*, 12 M.J. 431.

Even assuming *arguendo* that the fact Appellant did not have access to his record of trial was error, we discern no prejudice to Appellant. Appellant's defense counsel submitted seven requests for enlargement of time to this court, none of which asserted Appellant's lack of access to a copy of his record of trial as a basis for the enlargement. Appellant's counsel submitted three assignments of error, including one personally raised by Appellant pursuant to Grostefon, indicating at least some degree of communication between Appellant and his defense counsel regarding his appeal. Based on the information before this court, we find that Appellant received a copy of his record of trial on or after 7 May 2018, that Appellant has had sufficient time to raise any additional assignment of error to this court and has not done so, and that, as a result, Appellant has not demonstrated any prejudice from not having a copy of his record until on or after 7 May 2018. Accordingly, we grant no relief.

### C. Sentence Appropriateness

#### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

#### 2. Analysis

Appellant personally asserts that his sentence is inappropriately severe and should be reduced. He contends that his crimes should be balanced alongside his "exemplary duty performance," which spanned a greater period of time than his criminal offenses. He claims his "personal background shows that his sentence was unduly severe for his circumstances and should be reduced." We are not persuaded.

As for the particular circumstances of Appellant's case, Appellant pleaded guilty to communicating indecent language to a person he believed to be a 14-year-old dependent daughter of another military member, including conversations of an overtly sexual nature discussing how she could masturbate and other actions he would like to engage in with her. He bought her a bathing suit that he described as one that "doesn't cover much of the butt and it doesn't cover much of the chest," told her he would like to see her wear it, and told her how he would probably get an erection. Appellant also told her about his plans to befriend her father, who he believed to be another master sergeant assigned to RAF Mildenhall, so he could have the opportunity to be close to her, and talked to her about sneaking into her bedroom at night.

Appellant also pleaded guilty to possessing and viewing thousands of images and videos of child pornography, many depicting girls ranging in age from infant to pre-teenage years being sexually abused, including various incidents of oral, vaginal, and anal penetration. Dating back approximately 15 years prior to trial, during the majority of Appellant's time on active duty in the Air Force, Appellant collected, stored, and organized vast amounts of child pornography, including more than 16,000 images or videos of individuals identified as known victims of child pornography. While some of those images and videos were duplicates or depicted children in various stages of undress, Appellant possessed so many other images and videos of what appeared to be child pornography that AFOSI Special Agent BCS could not provide the court with an approximate quantity due to the "sheer volume of images."

Based on the offenses of which Appellant was convicted, he faced a maximum punishment of, *inter alia*, confinement for 25 years. Trial counsel requested the military judge impose a sentence to confinement of 15 years. Trial defense counsel requested that confinement not exceed three years. The military judge, having reviewed all of the evidence in the case, including Appellant's lengthy duty history, imposed a sentence of confinement that was less than one-half of the maximum authorized confinement that could have been imposed in Appellant's case. This court has further reassessed Appellant's sentence, resulting in a reduction in confinement by one year because of the military judge's erroneous consideration of victim impact statements under R.C.M. 1001A. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we find the sentence imposed by the military judge, as reassessed by this court, is not inappropriately severe based on the facts and circumstances of this particular case.

## III. CONCLUSION

The approved findings and the sentence as reassessed are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court