# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39367**

————————————

**UNITED STATES**
*Appellee*

v.

**Jacob COOK**
Air Force Academy Cadet, U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 March 2019

————————————

*Military Judge:* Brian D. Teter.

*Approved sentence:* Dismissal, confinement for 30 months, and forfeiture of all pay and allowances. Sentence adjudged 12 September 2017 by GCM convened at the United States Air Force Academy, Colorado.

*For Appellant:* Major Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DENNIS, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement, of two specifications of indecent recording and one specification of possession of child pornography in violation of Articles 120c and 134, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. §§ 920c, 934. The adjudged and approved sentence included a dismissal, confinement for 30 months, and forfeiture of all pay and allowances.[1]

Appellant raises two issues on appeal: (1) whether the military judge abused his discretion when he admitted a letter from a named victim's mother when there was no evidence showing that either the victim or the victim's mother was aware of Appellant's court-martial and (2) whether Appellant's post-trial confinement conditions warrant relief. With regard to Appellant's first assignment of error, we find that the military judge erred but also find that under the circumstances of this case the error did not substantially influence the sentence. With regard to Appellant's second assignment of error, we find no basis upon which to grant relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016). We affirm the findings and sentence.

## I. BACKGROUND

Appellant, a native of Seattle, Washington, was a cadet at the United States Air Force Academy when he was identified by an Internet Crimes Against Children investigation into child pornography. Appellant later confessed to using Twitter, a social media platform, to search for various types of pornography and avoid detection. Appellant admitted to specifically seeking pornography depicting girls between 13 and 18 years of age and said he "felt a rush" because he knew child pornography was illegal. This misconduct was the basis for Appellant's conviction for wrongful possession of child pornography.

During the investigation of Appellant, investigators also discovered video recordings of CJ and GG, two adult female friends of Appellant. Both CJ and GG had visited Appellant at his father's home in Seattle and each had taken a shower at the home during their respective visits. But it was not until the investigation that either woman learned that Appellant had surreptitiously recorded a video of her in the shower. This misconduct was the basis for Appellant's two convictions for indecent recording.

---

[1] The pretrial agreement provided that the convening authority would not approve confinement in excess of 48 months.

## II. DISCUSSION

### A. Victim Impact Statement

Appellant asserts that the military judge abused his discretion by considering a victim impact letter when there was no evidence showing that the letter's author was aware of Appellant's court-martial. We agree but find that the error did not substantially influence Appellant's sentence.

#### 1. Additional Background

At trial, the Government tendered two court exhibits for the military judge's consideration: one letter from CJ marked as Court Exhibit 1 and another letter, marked as Court Exhibit 2, from the mother of a child who appeared in an image of child pornography found on Appellant's computer. The image was from a set known as the "Lexie" series. The Government also offered, as an appellate exhibit, an affidavit from Investigator SG "to go with" the mother's letter. In making the offer, trial counsel clarified that he was offering Investigator SG's affidavit only to lay the foundation for the mother's letter.

The mother's letter was dated 27 July 2017, less than two months prior to Appellant's trial. It consisted of seven paragraphs, only three of which the military judge considered after finding that the remaining paragraphs were not directly related to Appellant's crimes. In the paragraphs the military judge did consider, the victim's mother addressed the challenges of having to explain the process to her daughter every time her daughter's pictures were found and the hundreds of emails she received whenever her daughter was identified in "a new case." The mother's letter also included the following statement: "All I can truthfully say is that I would like to see the offenders prosecuted for their crimes to the fullest."

Investigator SG's affidavit was dated 12 September 2017, the same day as Appellant's trial. The affidavit outlined Investigator SG's role as lead investigator of the crimes against the child victim identified in the "Lexie" series. The affidavit also included the following language relevant to this court's analysis:

> I am familiar with the victim impact statement from [the victim's mother], dated 27 July 2017 . . . . Due to [the victim's] age, her mother acts as her power of attorney on all matters involving the criminal prosecution of defendants who possess images from the "Lexie" series. [The victim's] mother wrote the victim impact statement in anticipation of cases like that of the Accused, and she wishes it to be considered in this and all criminal proceedings in which images from the "Lexie" series are possessed by the Accused. . . . Because [Appellant] possessed an

> image [in the "Lexie" series], I know that [her] mother wishes
> to submit the victim impact statement for your consideration.

Trial defense counsel objected to the mother's letter on multiple grounds, two of which are now raised on appeal: (1) that it was not drafted by the victim or a designated representative and (2) that the Government failed to establish that either the victim or the victim's mother intended the letter to be used at Appellant's court-martial. In overruling Appellant's objection, the military judge focused on the accompanying affidavit from Investigator SG. In particular, the military judge found:

> I note that the affidavit itself under M.R.E. 104 does not need to be admissible. And in the affidavit it specifically provides support to identify that [the letter's author] is, in fact, the mother of the victim [of child pornography] and that she . . . was identified in the series known as "Lexi[e]." . . .

> I also find that within the affidavit itself, that this investigator is expressing what seems to be obvious, that the victim impact statement is intended to be used in sentencing proceedings; and I also find that to be true within the victim impact statement itself where this individual says "all I can truthfully say is that I would like to see the offenders prosecuted for their crimes to the fullest." That sentence, I think, tends to indicate that this person clearly wanted this to be a victim impact statement. That being said, I am disregarding that sentence as a sentence recommendation coming from this individual. I'm disregarding it for those purposes. So just strictly from an evidentiary purpose, that sentence clearly indicates that this person would like this statement to be used in sentencing proceedings as reflected in the affidavit from Special Agent [SG].

### 2. Law and Analysis

Our interpretation of Rule for Courts-Martial (R.C.M.) 1001A "is a question of law, which we review de novo." *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citation omitted). We review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion. *Id.* at 383 (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).[2] It is an abuse of discretion to permit such a statement

---

[2] Appellate courts review a military judge's decision to admit evidence for an abuse of discretion. *See*, *e.g.*, *Humpherys*, 57 M.J. at 90 (citation omitted). In *United States v. Hamilton*, this court held that victim impact statements offered pursuant to R.C.M.

*(Footnote continues on next page)*

based on an erroneous view of the law. *Id.* (citing *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013)).

R.C.M. 1001A(e) provides that, during presentencing proceedings, the victim of an offense of which the accused has been found guilty

> may make an unsworn statement and may not be cross-examined by the trial counsel or defense counsel upon it or examined upon it by the court-martial. The prosecution or defense may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both. When a victim is under 18 years of age, incompetent, incapacitated, or deceased, the unsworn statement may be made by the victim's designee appointed under R.C.M. 801(a)(6). Additionally, a victim under 18 years of age may elect to make an unsworn statement.

"[T]he rights vindicated by R.C.M. 1001A are personal to the victim in each individual case." *Barker*, 77 M.J. at 382. "All of the procedures in R.C.M. 1001A contemplate the actual participation of the victim, and the statement being offered by the victim or through her counsel. Moreover, they assume the victim chooses to offer the statement for a particular accused . . . ." *Id.* at 383.

As Appellant did at trial, he asserts on appeal that there was no evidence that either the child victim or her mother intended the letter to be offered at Appellant's trial. The United States Court of Appeals for the Armed Forces (CAAF) addressed a similar issue in *Barker* and found statements offered under R.C.M. 1001A inadmissible without the participation of the child victim or her advocate. *Id.* Here, as in *Barker*, there is no evidence that the victim in this case was even aware of Appellant or his court-martial, much less that she chose "to offer the statement for [this] particular accused." *Id.* The military judge relied on Investigator SG's affidavit together with the mother's statement that she wanted to "see the offenders prosecuted for their crimes to the fullest." There are two problems with relying on this combination. First, the mother's statement fails to show that she was choosing to offer the statement for Appellant's case in particular. Second, the investigator's assertion that the child victim's mother "wishes to submit the victim impact

---

1001A are not "evidence," but nevertheless applied the abuse of discretion standard in reviewing the military judge's decision to allow such statements to come before the court. 77 M.J. 579, 583–85 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, ___ M.J. ___, No. 18-0135, slip op. at 12 (C.A.A.F. 28 Feb. 2019).

statement for [the military judge's] consideration" was insufficient to establish that the victim personally exercised her right to be heard under R.C.M. 1001A. The affidavit is essentially an attempt by the Government to assert the right on the victim's behalf, a practice the CAAF expressly rejected in *Barker*. *Id.* at 382.

But the error alone does not end our analysis. When there is error regarding the presentation of victim statements under R.C.M. 1001A, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Id.* at 384 (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). In applying the test, we consider the following factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (quoting *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017)). We address these factors in turn.

The Government's case was strong, consisting largely of facts stipulated by Appellant. The Government's sentencing argument focused on Appellant's deceptive behavior and its theory that Appellant was aroused by breaking the law and that he lacked respect for the "right to consent".

The Defense's sentencing case was similarly compelling, focusing on Appellant's willingness to take responsibility for his actions and witness accounts of how he consistently provided support to friends and classmates. Perhaps the most significant aspect of Appellant's case was his request for sexual offender treatment. The Defense introduced evidence of the confinement facility's treatment program and pointed out its requirement that offenders be sentenced to a minimum of 18 months to be eligible for sexual offender treatment. Consequently, the Defense argued for 24 months of confinement to make "sure that he's going to have enough time to be there and qualified to take that program, take advantage of it and to work on himself." The Defense's argument was successful, with Appellant being sentenced to only 30 months of confinement—significantly less than the 20-year maximum confinement he could be adjudged, half of the 5 years of confinement the Government requested, and less than the 48-month maximum confinement period he agreed upon in his pretrial agreement.

With regard to the materiality and quality of the mother's letter, we note that the letter pertained to only one of the 133 images of child pornography the military judge considered.[3] We further find it "highly relevant" that Ap-

---

[3] The parties stipulated that 113 images constituted child pornography. The Government offered an additional 20 "disputed images" for the military judge's consider-

*(Footnote continues on next page)*

pellant was sentenced by a military judge who is presumed to know the law. *Barker*, 77 M.J. at 384 (citing *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008)) (additional citation and footnote omitted). The continuing harm that the possession of child pornography causes to victims "is itself settled law." *Barker*, 77 M.J. at 384 (citing *Osborne v. Ohio*, 495 U.S. 103, 111 (1990)). In Appellant's case, as in *Barker*, "many of the themes and harms contained in the improperly admitted letter[ ] are well known to the law, and thus are presumed to have been known by the military judge." *Id*. Finally, we note that the Government's sentencing argument made no reference to the letter, focusing instead on the well-known harm that victims of child pornography are re-victimized every time their images are downloaded and every time "another person is enjoying the exploitation of their innocence."

Under the facts and circumstances of this case, we find that the mother's letter did not substantially influence the sentence. Accordingly, we find that the military judge's error in considering the letter did not prejudice Appellant.[4]

### B. Post-trial Confinement Conditions

Appellant was physically assaulted while confined at a civilian jail after his court-martial. Because of this incident, he asks us to grant sentence relief using our authority under Article 66, UCMJ. We decline to do so.

#### 1. Additional Background

Immediately following Appellant's sentence to confinement, he was transferred to the Teller County (Colorado) Jail where he remained for approximately three weeks before he was transferred to a military confinement facility. While confined at Teller County Jail, Appellant was assaulted by another individual who was confined at the same facility. The facility's security camera captured the incident and showed someone confront Appellant and strike him in the head. Appellant was given the opportunity to press assault charges or allow the jail to handle the matter "in house." Appellant elected the "in house" option and the individual who assaulted him was punished by the facility.

---

ation. After the sentence was announced, the military judge indicated that he considered all of the images but noted that there were a "sufficient number of images within the undisputed portions to justify [the] sentence as adjudged."

[4] Given our resolution of this issue, we do not address whether the mother constituted "a crime victim" under Article 6b, UCMJ, 10 U.S.C. § 806b, or R.C.M. 1001A.

### 2. Law and Analysis

Appellant asserts that this court should use its power under Article 66(c), UCMJ, to grant him sentencing relief "because an unprovoked jailhouse assault caused him significant physical and emotional injury." Though we do not make light of any injury Appellant may have suffered during confinement, "[o]nly in very rare circumstances do we . . . exercis[e] our Article 66(c) authority to grant sentence relief based upon conditions of post-trial confinement when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted), *rev. denied*, 77 M.J. 277 (C.A.A.F. 2018) (mem.); *cf. United States v. Nerad*, 69 M.J. 138, 145–47 (C.A.A.F. 2010) (holding that, despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency).

Here, Appellant does not specifically allege that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment[5] or Article 55, UCMJ, 10 U.S.C. § 855. Rather, he claims that the assault made his "sentence to confinement much more severe." Appellant's claims are similar to those we addressed in *United States v. Gay*, 74 M.J. 736, 745 (A.F. Ct. Crim. App. 2015), where we found the appellant's sentence "inappropriately severe both on the basis of his post-trial confinement conditions and the government's delay in forwarding the record for our review." When the CAAF upheld our finding, it emphasized that Courts of Criminal Appeals do not have "unlimited authority . . . to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016). "Rather, we hold that the Air Force Court of Criminal Appeals decision to grant sentence appropriateness relief in this case was based on a *legal deficiency* in the post-trial process and, thus, was clearly authorized by Article 66(c)." *Id.* (emphasis added).

We agree with the Government's assertion that, "with regard to sentencing relief, Article 66(c) is triggered only when the sentence itself, or its execution, violates an appellant's rights under the UCMJ or the United States Constitution." In other words, the relief must be "sparked by a legal error." *Id.* Appellant contends that the Government's failure to promptly move Appellant to a military confinement facility, and that alone, constituted legal error. We disagree. Appellant offers no evidence, and we find none, to suggest that the Government's action or inaction led to the assault on Appellant. The assault was committed by a private individual and immediately addressed by

---

[5] U.S. Const. amend. VIII.

civilian confinement officials in accordance with Appellant's request. The assault on Appellant, while regrettable, falls far short of the legal deficiency identified in *Gay*.

Having given individualized consideration of Appellant on the basis of the nature and seriousness of his offenses, the character of Appellant, and the entirety of the record, we find his sentence appropriate and decline to grant the requested relief.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. § 859(a), 866(c) (2016). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court